Harrison v. Harrison et als.

~~~~~~~~~~~~~~~~

HARRISON *vs.* HARRISON *et als.*

1. The law of the place of the parties' actual domicil must govern in all questions of divorce, without regard to the law of the place where the marriage was celebrated.

2. A decree of divorce regularly rendered by the proper tribunal in this State is not invalid because the laws of the State in which the marriage was celebrated do not allow a divorce *a vinculo matrimonii.*

3. A decree of divorce against a non-resident defendant, upon whom service has been perfected by publication in the manner prescribed

Harrison v. Harrison et als.

by the statute, is equally as obligatory upon the defendant as if he had been personally served with process, or had appeared and answered the bill.

4. When a wife abandons her husband in this State and removes to another State, and after the expiration of three years he files a bill against her for divorce, he may proceed against her as an absent defendant, although she has not resided in this State during the three years. The desertion with intention of abandonment, which is the cause of complaint, having originated here, it is immaterial where the defendant resides during the three years subsequent thereto.

5. A decree of divorce does not become ineffectual because the act of the Legislature confirming it is not passed at the first General Assembly of the State held after its rendition.

6. Nor will the decree be pronounced fraudulent in a subsequent proceeding in which it is collaterally attacked, on account of a misnomer of the defendant in the insertion of a letter as the initial of a middle name, the description being otherwise sufficiently accurate, and there being no allegation in the pleadings of such subsequent suit that she was not known or called by such name.

7. Nor will the decree be considered void for fraud when collaterally impeached, because the bill omitted to state a fact which would have been a bar to the relief sought.

ERROR to the Court of Probate of Dallas.

GAYLE & GAYLE, and BOYCE, for plaintiff in error:

I. The court below erred in admitting as evidence the Alabama divorce and proceedings connected with it.

1. Harriet Harrison is not Harriet *Y.* Harrison.—See Poynter on M. & D., 10, (Note F;) 2 Ecc. R. 121.

2. The insertion of the letter "Y" was fraudulent; the notice was by publication. Defendant could not answer bill by that name. It enabled complainant to withhold the proceedings of the Chancery Court of South Carolina, and to get a decree *a vinculo* without a division of the estate.—See Clay's Dig. 170, § 8; Poynter on M. & D., 11, Note.

II. The decree of divorce pronounced in Alabama is void,

1. Because of the want of personal service upon the defendant, Harriet Harrison. There was no proof of any personal service.—See 15 Johns. 141; 9 Mass. 467; 1 ib. 401; 4 Cow. 293; 13 Wend. 407; 2 Stew. 399; Ib. 445; 3 Ala. 552; 11 ib. 668; 5 Con. U. S. R. 34; Constitution of Ala., Art. 1, § 29.

2. Because the divorce was fraudulently obtained. The addition of the letter " Y" in the Alabama proceedings (if the Alabama bill was filed against the applicant at all) was intended to elude the applicant from answering the bill, for the purposes before stated.—See Clay's Dig. 170, § 8; Poynter on M. & D., 11, Note.

3. Because when Kirkland Harrison filed his bill in Alabama on the ground of three years voluntary abandonment, the applicant and the said Kirkland were separated by a decree of the Chancery Court of South Carolina, and had been for years before, and this fact the said Kirkland, well knowing it, concealed from the Alabama court *in fraudem legis.*—See 15 Johns. 141.

4. Because the applicant was married to the said Kirkland in the State of South Carolina, where the marriage tie is indissoluble, except by death. Marriage is a contract, and the *lex loci contractus* governs it.

The marriage tie is indissoluble in South Carolina.—See 2 Strob. L. R. 11; 1 ib. Eq. 387; 2 ib. 174.

Marriage is a civil contract, and the *lex loci contractus* governs it.—See 6 Ala. 765; 1 Black. Com. 345; 7 Dana, 185; 3 Hag. Ecc. 639; 13 Eng. Ch. R. 193; Story's Confl. of Law, § 226; 8 Ala. 48; 13 ib. 802; 17 ib. 636; 8 Wheat. 1.

5. Because the act of the Legislature of Alabama perfecting the divorce, is void as in violation of the first paragraph of 10th section of the 1st Art. of the Constitution of the United States.—See 1st par. 10th sec. 1 Art. Con. U. S.; 6 Cranch, 136; 7 ib. 164; 2 Dallas, 304; 4 Wheat. 695; 17 Johns. 195; 16 Ohio, 599; 1 Blackf. 220.

III. It is insisted by the defendants, that the remedy of the applicant was only by writ of error, or bill in chancery to set aside the Alabama divorce. This position is not maintainable—

1. Because a divorce or judgment may be attacked collaterally for fraud, or for want of jurisdiction of the person or subject matter.—See 2 Stew. 129; 15 Johns. 141; 16 Ala. 280; 8 Smedes & M. 505; 7 ib. 85; 2 Watts, 354.

2. Because the applicant was not a party to the proceedings.

IV. It is insisted that the decree in South Carolina is void for want of jurisdiction, because Kirkland Harrison was domiciled in Alabama, and his domicil was hers. Ordinarily this may be true, but in this case the argument will not hold—

Harrison v. Harrison et als.

1. Because Kirkland Harrison appeared in South Carolina and answered the applicant's bill, without objecting to the jurisdiction of the court.—See 2 Scam. 263-79; 4 McCord, 79; 8 McLane, 587 ; 4 Geo. R. 47; 1 Denio, 91; 1 Mason, 360 ; 2 Ecc. R. 13; 2 McLane, 473; 12 Ala. 90; 3 ib. 552 ; 10 New H. 61.

2. Because applicant was driven to her friends in South Carolina by the inhuman cruelty of Kirkland Harrison, and his conduct gave her a distinct residence and domicil.—17 Ala. 250.

3. If the South Carolina decree is good and valid, that too gave her (as against the Alabama divorce) a domicil in South Carolina.—See Fillimore on Domicil, 57 L. Lib. 27.

V. The decree was not presented to the ensuing Legislature, and therefore it is void.—See Clay's Dig. 171, § 10. The decree was rejected at the session of 1841-2, and we pledge ourselves to show it from the journals of the Legislature. This rejection was forever conclusive against the divorce.

LAPSLEY & HUNTER, contra :

There is but one question involved, to-wit : was the divorce se radically defective that the Probate Court should have regarded it as a mere nullity, and decreed dower to the former wife ? To determine this question, we would, in the first place, suggest these general facts and principles which protect the divorce and stand in the way of the objections made to it:

1. The divorce has the dignity not merely of a decree of the court of chancery, a court of general jurisdiction and our highest court of record of original jurisdiction, but also the dignity of being an act of the Legislature.—See Con. of Ala., Art. 6, § 13; Clay's Dig. 169, § 1.

2. This is not a direct proceeding in the same or an appelate or higher court, to set aside the divorce, but is a collateral attack in a proceeding for dower in an inferior court of special and limited jurisdiction.

3. When decrees and judgments are thus collaterally attacked, the strongest possible intendments are made in their favor.—16 Ala. 271; 10 Pet. 449; 6 Por. 219; 7 Cranch, 423; 3 Pet. 193; 6 Cranch, 267; 8 Pet. 8 ; 4 Scam. 364; 3 How. U. S. 340-41.

First, as to the jurisdiction of our Chancery Court. No proof aliunde being made, but the record alone relied on to sustain the

objection to the jurisdiction, the strongest intendments are made in favor of the jurisdiction.—2 How. U. S. 340-41-42. But there can be no doubt as to this jurisdiction.—See 2 Kent's Com. 106; 4 Wheat. 629.

As to the second objection, that the notice was by publication instead of personal service, it cannot be made in this collateral way.—16 Ala. 271; 10 Pet. 449. But if that matter could be looked into in this manner, the notice by publication was certainly sufficient.—See Clay's Dig. 352, § 5. Notice by publication in a divorce case is less objectionable than in other cases, for no judgment pro confesso is allowed; but full proof is required, as in cases of answer denying.—See Clay's Dig. 170, § 6; Ib. 352, §§ 44; Ib. 170, 5; 12 Ala. 369.

Thirdly, as to the indissolubility of the marriage. It was not indissoluble by the laws of South Carolina.—See 2 Kent's Com. 106; 4 Wheat. 629-96; Story's Confl. of L. 313, § 213. If the marriage were indissoluble in South Carolina, that would not prevent a valid divorce, when the parties had abandoned their domicil in that State and fixed a new domicil where the law permitted divorce.—9 Por. 9; 12 Ala. 54; 2 Kent's Com. 459; Story's Confl. L. 233-168-69-54, §§ 178-99, 280; 3 Martin, 60; 3 ib. 581; 4 ib. 649; 6 ib. 83; 9 ib. 573; 14 ib. 574; 17 ib. 517-605-6; 2 Burrow's R. 1077; 3 Wheat. 101; Wheat. Elem. of the Law of Nations, 199-200. Besides these general authorities, the following are cited as being precisely in point, and conclusive in our favor.—Story's Confl. of Laws, 350, § 230, A, 3d edit. published in 1846, but not in previous edition.—Dorsey v. Dorsey, 7 Watts, 350; Harding v. Alden, 9 Greenl. R. 140; Barber v. Root, 10 Mass. 260; McGuire v. McGuire, 7 Dana, 181; Cooper v. Cooper, 7 Ohio R. 528.

As to the the fourth objection, that the divorce impairs the obligation of the contract of marriage, we simply refer to 2 Kent's Com. 106; Dartmouth College v. Woodward, 4 Wheat. 629-96.

Fifth, as to the fraud alleged—first, it does not appear that any such question was made on the evidence in the court below. Secondly, fraud is never presumed, but must be clearly proved by evidence necessarily pointing to it. Third, the insertion of the letter " Y" and the omission to mention the South Carolina proceedings, so far from pointing of themselves (or by

the aid of connecting evidence) to a fraud, are merely collateral independent facts, which do not even tend to prove a fraud. As to the letter "Y," see Edmondson v. The State, 17 Ala. 199. As to the South Carolina decree, even if valid, it was wholly immaterial, unless pleaded by her in the chancery divorce suit. No actual knowledge of its existence on his part is shown; nor was he bound to disclose it, if he had known its existence, and if it had been material, because it was matter of defence to be set up by her.—See Adams v. McMillon, 7 Por. 73; Gould's Plead., p. 177, ch. 4, § 17; Chitty's Pl. 301; 1 Story's Eq., §§ 204-5-6-7; 9 Ala. 662. But the South Carolina decree was absolutely void for want of jurisdiction of the subject matter. Harrison's answer could not waive that.—See 7 Por. 37; 8 ib. 554. To show that her legal domicil was in Alabama, we cite Story's Confl. of Laws, 166, § 198; Ib. 57, § 46; 14 Martin's R. 574-78; 9 Bligh's R. 89-103-4.

As to Harrison's affidavit for publication—see 4 Hump. 346; 1 U. S. Dig. 590, § 13.

The marriage domicil is thus shown to have been in this State. That being so, it is clear the South Carolina court had no jurisdiction, but it was usurping a jurisdiction over a matter belonging exclusively to our courts.—See 1 Johns. 424; 11 Mass. 227; 7 Dana, 181; U. S. Law Mag., Nov. 1850, p. 295.

Most, if not all the objections now urged against the divorce, if they ever had any validity, should have been set up in the Chancery Court against the decree by which they are now concluded; they came too late, if there was no other objection.—See the case of Lampkin v. Heyer, Jan. Term, 1851.

It will be observed that no South Carolina decisions are in evidence; consequently those which may be read in argument can have no influence as proof of any peculiar law in that State.— See Inge v. Murphy, 10 Ala. 885; Bender v. Reynolds, 12 ib. 446-8.

DARGAN, C. J.—This was an application to the Court of Probate of Dallas, by Harriet Harrison, claiming to be the widow of Kirkland Harrison, deceased, and praying that dower might be allotted to her of the lands of the decedent. The application was dismissed, and the cause is brought before this court by writ of error.

Harrison v. Harrison et als.

The facts which give rise to the questions of law for our re-vision, are these: In 1828, Kirkland Harrison, the decedent, in-termarried with Harriet Ellison, the plaintiff in error, in the State of South Carolina, where both the parties then resided and continued to reside until the year 1834, when they removed to this State with the view to make it their permanent home. In a few months, however, after residing in this State, the plaintiff left her husband and returned to the State of South Carolina, where she has ever since remained; but the decedent, her hus-band, continued to reside in this State until his death, which took place in the year 1850. In the year 1835, the plaintiff in error filed her bill in equity in South Carolina, alleging cruelty on the part of her husband towards her, and praying alimony, and to be protected in living separate and apart from her hus-band. A commission was issued from the Court of Chancery in South Carolina directed to commissioners in this State, and be-fore them Kirkland Harrison answered the bill denying the alle-gations of cruelty, but made no objections to the jurisdiction of the court. It does not appear that he took any further notice of the suit, but she examined witnesses, and a decree was ren-dered in conformity with the prayer of the bill.

In the year 1839, Kirkland Harrison filed his bill in the Chan-cery Court of Dallas county against the plaintiff in error, in which she was styled Harriet Y. Harrison, formerly Ellison, al-leging that she had voluntarily left his bed and board for the space of three years, with the intention of abandonment, and praying a divorce from the bonds of matrimony. This bill, how-ever, took no notice of the decree that had been rendered in the State of South Carolina, and the plaintiff was made a party to it by publication only, without personal service, and it is stated in the affidavit of Harrison, filed to obtain the order of publication, that the plaintiff then resided in the State of South Caro-lina, and without the limits of this State. Upon proof of the marriage and that the parties removed to this State in the early part of the year 1834, and that the plaintiff in error left her husband in a few months thereafter and returned to South Caro-lina, where she had ever since remained, the chancellor de-creed a divorce according to the prayer of the bill. This de-cree was rendered in July, 1841, and in pursuance thereof an act was passed by the Legislature of the State of Alabama, on

33

the 15th day of January, 1844, divorcing the said Kirkland Harrison from his wife Harriet. In the year 1845, Kirkland Harrison intermarried with Margaret Smith in this State, with whom he lived as his wife until his death, and had by her one child, who is now an infant. It also appeared in the court below, that by the laws of South Carolina, where the contract of marriage was celebrated between Kirkland Harrison and the plaintiff, the bonds of matrimony are indissoluble so long as the parties live, and for no cause can a valid marriage be dissolved by the courts of that State.

This being the law of that State, it is contended, first, that a marriage celebrated there cannot be dissolved in another State, although the parties have removed to, and become citizens of such other State, in which divorces *a vinculo* are allowed. I cannot doubt but that the law of the place of the actual domicil of the parties is to govern in questions of divorce, without regard to the law of the place where the marriage was celebrated; and if the laws of the place of the domicil allow of divorces for any cause, the injured party may obtain one, although the law where the contract of marriage was consummated would not allow it for any cause. This is said to be the settled doctrine of the American courts, by Judge Story, in his work upon the Conflict of Laws, § 230, and the decisions to which he has referred, and which have fallen under my observation, fully sustain his assertion.

In the case of Barber v. Root, 10 Mass. 265, the parties were married in Massachusetts, but afterwards removed and fixed their domicil in Vermont, and in the latter State the wife obtained a divorce *a vinculo* by a decree of the Supreme Court. The validity of this decree came in question before the Supreme Court of Massachusetts, and it was determined to be valid, notwithstanding the cause for which the divorce was granted in Vermont would not have been sufficient to authorize the divorce by the laws of Massachusetts; and in the opinion the principle was asserted, that the conduct and relative duties of the married parties, as well as the relation itself, must be governed by the law of the domicil of the parties, and not by the law of the place where the marriage was contracted; and even in annulling the relation, reference must be had to the law of the domicil, and not to the law of the place of the contract. In the case of Harteau v.

Harrison v. Harrison et als.

Harteau, 14 Pick. 181, the court said, that the place where the marriage was had seems to be of no importance, but we must look to the relation of the parties; as it subsists and is regulated by our laws, without considering under what law, or in what country the marriage was contracted. In the case of Dorsey v. Dorsey, 7 Watts, 350, the parties being citizens of Pennsylvania were married there, but afterwards removed to Ohio, where the husband deserted the wife, who returned to her friends in Pennsylvania, and in that State filed her libel for divorce. The libel was dismissed on the ground that the courts of Ohio *alone* had jurisdiction of the matter, as the parties had their actual domicil in that State at the time the offence by the husband was committed. Chief Justice Gibson, in delivering the opinion of the court, said, "that the law of the place of the marriage must necessarily be the law of the marriage, as to its primitive obligation; but except upon the principle of perpetual submission to its supremacy in all things, it is not the law of the contract for the determination of its solubility." Again: he said, "while the parties remain subject to our jurisdiction, the marriage is dissolvable only by our laws, but when they are remitted to another, it is incidentally remitted along with them." The same principle is asserted in the case of Maguire v. Maguire, 7 Dana, 181. But it is contended, that by the laws of England the courts of Alabama have no authority to dissolve a marriage celebrated in a country where such contract is indissoluble, and that these laws are to govern in determining this question. But upon an examination of the English authorities, it will be found that even they would compel us to hold, that when a marriage is dissolved by the proper tribunals of this State, and the validity of the divorce is brought in question in our own courts, it must be held valid, notwithstanding by the laws of the place where the marriage was contracted no divorces were allowed. In the case of Rex v. Lolly, Eng. Crown Cases, 240, the prisoner was indicted and convicted of the crime of bigamy. Upon the trial it appeared that he had been married to Ann Sevaia, in Liverpool, who was divorced from him by the Consistorial Court of Scotland, and after such divorce, he was again married in England to Helen Hunter. The case was argued before all the judges of England, and they held the conviction right, on the ground that no foreign tribunal could dissolve an English marriage

*a vinculo matrimonii*, for a cause for which it was not liable to be dissolved in England; and this case has been followed in the two subsequent cases of Tovey v. Lindsey, 1 Dow. R. 117, and Mc-Carthey v. DeCaix, 2 Russ. & Mylne, 614. · But in the subsequent case of Warrender v. Warrender, 9 Bligh R. 89, the parties were married in England, but went to reside in Scotland. They afterwards went to England and executed articles of separation, The husband returned and resided in Scotland; but the wife went abroad and never returned. The husband brought suit in Scotland for a divorce, on the ground of adultery; a divorce *a vinculo* was granted, and the cause finally came before the House of Lords of England on appeal, and the decree was affirmed on the ground that the courts of Scotland had jurisdiction to decree a divorce, the parties · being actually domiciled there; and as the case came from Scotland, the House of Lords was bound to administer the Scottish law. Without at present undertaking to say whether this case can be reconciled with the case of Lolly or not, it is clear that upon the authority of the case of Warrender v. Warrender, we should be bound to hold the decree valid in this State, without regard to the question, how it would be considered in South Carolina where the marriage was contracted. For, if we admit that the courts of England would have disregarded the decree in the case of War-render and Warrender, had it been drawn in question in *their courts*, yet even the English courts hold that in Scotland, where the parties resided and the decree was rendered, it must be held valid. If we then are governed by the English decisions, as the parties were domiciled in this State and the decree here rendered, we cannot refuse to give it validity, because by the place of the contract of the marriage, the marriage tie is *indissoluble*.

But I cannot give my assent to the case of Lolly and those founded upon it. It is true we must look to the *lex loci contractus* to determine upon the validity of the marriage, and also to ascertain the rights each party acquired in the goods or property of the other, possessed at the time of the marriage, or acquired during the time of their domicil there. But when they remove and acquire a new domicil and become citizens of another country, although they carry their rights with them, they do not, and cannot carry with them the *lex loci contractus*. They come

under a new set of laws, and they must govern themselves by them; and if they acquire new rights after their removal, the law of the domicil must govern and ascertain them. Thus, if a marriage is celebrated in a country where the common law prevails, the husband becomes entitled to all the personal property of which the wife was possessed at the time of the marriage; but if they remove to a country where the civil law prevails, and afterwards acquire property, the civil law, and not the common law of England, must furnish the rule by which the rights of the husband and wife must be ascertained in reference to such newly acquired property. So, on the other hand, if the civil law prevails where the marriage is celebrated and the parties reside, it will furnish the rule that will govern the rights that each party takes, by virtue of the marriage, in the goods of the other; but if they subsequently remove to a country where the common law prevails and there acquire property, the common law must govern in reference to it.—Story's Confl. of Laws, § 178. If the laws of the newly acquired domicil must govern the marital rights as to property acquired after the removal, why shall not the relation itself in reference to the future conduct of the parties be governed by the laws of their newly acquired home? The contract of marriage is unlike all others in this; unless it be annulled by law, the duties and obligations it imposes are never fully performed or ended until the contract is determined by death. If then a married couple shall remove from the place of their marriage and take up their abode in another jurisdiction, and one of the parties there violates all the duties and obligations of the contract, by what law, it may be asked, shall the injured party seek redress? Would the law of the domicil apply any other remedy for the wrongs committed within its own jurisdiction, than it would if the marriage had been celebrated there? I think all will answer, that the same measure of redress and the same remedy would be applied, as if the parties had been there married; and if so, to my mind it follows that the marriage relation itself must be governed by the laws of the domicil, irrespective of the laws of the place of the marriage; and if governed by the laws of the domicil, it must be *in toto;* and consequently if the marriage is properly annulled by those laws, it should be so considered all over the world. We constantly refer to the *lex loci* to determine the validity of a contract, and I will ask if we

should not refer to the *lex fori* to determine upon the validity of its discharge? Upon what principle can we say that the decree rendered in the case of Warrender v. Warrender is valid according to laws of Scotland, but invalid in England or elsewhere? If the marriage was legally annulled in Scotland, where the parties resided, it should be so considered every where else; otherwise, we introduce this state of things, a contract binding on the parties every where except in the place of their domicil, and there it is legally discharged and annulled. To my mind, it appears that the case of Lolly is inconsistent with the principle that governs in the case of Warrender v. Warrender, and that the one or the other of them will have to be ultimately overruled by the English courts; or, if not, many embarrassing questions and disagreeable consequences will flow from the conflict, which we shall escape by steadily adhering to the American decisions, which hold that the laws of the domicil of the parties must govern the relation of husband and wife, from the time they are domiciled at their new home, without regard to the laws of the country where they were married. We come, therefore, to the conclusion, that the decree rendered in Alabama is not invalid because the laws of South Carolina, where the marriage was contracted, do not allow of a divorce *a vinculo matrimonii.*

But the decree is assailed on several other grounds. It is urged that it is void because the plaintiff in error was not served with process personally, and also because it was not affirmed by the Legislature at the next session after it was rendered, and further, that it was fraudulently obtained.

Independent of our statute, it is certain that the decree would be void, because the plaintiff in error, who was the defendant to the bill, was not personally served with process, nor did she appear or submit to the jurisdiction of the court. But in this State, as in many others of the Union, if not in all, the Legislature has passed laws to enable a complainant to proceed against an absent or non-resident defendant, on whom personal service cannot be effected, by publication, when the cause of complaint originates in this State, (see Clay's Dig. 353-4, § 48,) and decrees rendered upon service by publication, in the manner prescribed by the act, unless controverted in the manner pointed out thereby, and set aside, are equally as binding and obligatory

upon the absent defendant as if he had been duly served with process, or had appeared and answered the bill. See Bank of Norfolk v. The Heirs of Holman, 12 Ala. 369 ; Glover v. Glover, 16 ib. 440. It has been, however, argued that the cause of action or ground of complaint did not originate or take place in this State, and consequently the court had no jurisdiction to render the decree. But the bill alleges, and the proof shows, as well as the decree itself, that the plaintiff in error removed with her husband to this State, and after living with him a few months here, she abandoned him and returned to South Carolina. The abandonment or desertion of the husband is the ground of complaint, and that took place in this State. Nor can we yield our assent to the argument that the plaintiff must have remained three years in the State after the abandonment in order to entitle her husband to proceed against her as an absent defendant. The desertion, with the intention of abandonment, must continue three years to entitle the injured party to a divorce ; but if the desertion takes place whilst the parties have their domicil in this State, it is immaterial where the guilty party resides during the three years, whether in or out of this State, the ground of complaint takes place here.

Neither is the decree ineffectual because the Legislature of the State did not pass a law confirmatory thereof, at the next General Assembly of the State held after the same was rendered. It is made the duty of the party in whose favor a decree is rendered, to deliver to the Speaker of the House of Representatives, either by himself, his agent or attorney, a transcript of the proceedings and decree, in the manner directed by the act of 1820, (Clay's Digest, 171,) and the Speaker is to cause the record to be opened in the presence of the House, and the same to be read and proceeded upon according to the constitution of this State. But neither the constitution nor our acts passed in pursuance thereof prescribe the time within which the Legislature must act upon the decree to give it validity, and we cannot restrain or limit them to the session next after the decree is rendered, or hold the law void which they may pass confirmatory of the decree, because it was passed at a subsequent session.

The last objection is, that the decree was fraudulently obtained—first, because the bill describes the plaintiff in error by the name of Harriet Y. Harrison, when her name was Harriet, with-

out the addition of the letter Y, and without a middle name; secondly, because the bill omitted to state the proceedings and decree had in South Carolina, nor were they brought in any manner to the notice of the court.

It must be observed that no evidence was introduced to show the intention of the complainant in alleging the name of his wife to be Harriet Y. Harrison instead of Harriet Harrison, nor that the plaintiff in error was misled or injured by the insertion of the letter Y as part of her name. But the question arises solely on the fact, and the plaintiff seeks to avoid the effect of the decree, simply on the ground that she was christened by the name Harriet, without the addition of a middle name, and the bill was filed against her by the name of Harriet Y. We cannot say from this circumstance alone that the decree was fraudulent. The bill filed by Kirkland Harrison sufficiently described his wife to enable her at once to know against whom it was filed. She is described as Harriet Y. Harrison, formerly Ellison, and the place of their marriage is correctly given by the bill. If the plaintiff saw the publication made against her, she at once knew against whom it was filed. This at once would do away with the idea of intentional fraud, for if the letter Y had been inserted to mislead the plaintiff and to prevent her from contesting the bill and the decree that was rendered, the complainant would scarcely have given such a description of her as would, beyond doubt, have defeated the very purpose he had in view. But besides this, it is not even alleged in the pleadings that the plaintiff was not called or known by the name of Harriet Y. Harrison. It is not unfrequently the case that a middle name is given or assumed after the first is given, or that one becomes as well and as familiarly known by a name differing from his baptismal name, as he is by his true name. Whether the plaintiff in error may not, in the one or the other of these modes, have acquired the addition of the letter Y to her name is not negatived, either by proof or by the pleadings. The decree cannot be affected with fraud on this ground.

The only remaining ground on which the decree is assailed for fraud, is the omission to state in the bill the proceedings and decree rendered in South Carolina, by which the plaintiff in error was authorized and protected in living separate and apart from her husband, Kirkland Harrison. We must bear in mind

Harrison v. Harrison et als.

that we are not considering what effect a foreign tribunal or the courts of a sister State would give to the Alabama decree, the plaintiff in error not being made a party to the bill by personal service of process, but the question is, what effect is to be given to this decree by the courts of Alabama? and we have seen that inasmuch as the cause of complaint arose or took place here, and the plaintiff in error was made a party to the bill in the mode pointed out by our law, the decree is binding on her, although she resided out of the State and did not have actual notice of the suit. To hold otherwise would not only be productive of disastrous consequences, but it would be to deny to our Legislature the power to pass laws enabling the courts of this State to render a decree against an absent defendant, when he was not personally served with process, although the cause of complaint arose here, and the absentee is made a party to the bill in the mode prescribed by the Legislature. Such a proposition we could not sanction, nor do we suppose that it would be sanctioned by any court either of the United States or of England. As the plaintiff in error cannot object to the decree on the ground that she did not have actual notice of the suit, the question is narrowed down to this, is the decree to be considered void for fraud, when collaterally called in question, because the bill omitted to state a fact or a ground of defence that would have formed a bar to the relief sought by it? In the case of Talbott v. Todd, (5 Dana 190,) the Court of Appeals of Kentucky held that the mere omission, perversion or misrepresentation of the facts in a bill would not constitute fraud, or subject the decree to impeachment on that ground. We are satisfied with the principle announced in this case, at all events, when the validity of the decree is collaterally called in question; for, if we allow the truth of the allegations of the bill on which the decree is rendered to be contested, and the decree held for naught, if the facts are found untrue, we should take from it all binding efficacy, and open every question to litigation that has been adjudicated and settled by the decree.

Coming to the conclusion that the decree rendered in this State divorcing Kirkland Harrison from his wife, cannot be impeached for any of the reasons alleged in the pleadings, it becomes unnecessary to examine the important question, whether the decree rendered in South Carolina in favor of the plaintiff in error was

binding on her husband or not. That question may be hereafter presented in such a shape as to require its solution, but until then we shall express no opinion upon it.

There is no error in the record, and the judgment of the court below must be affirmed.