Vischer *v.* Vischer.

---

Nonsuit ordered.

[Warren Special Term, October 14, 1851. *Hand*, Justice.]

———— ·◦· ————

## Margaret Vischer *vs.* Nicholas F. Vischer.

A. and B., having a domicil in this state, were married here, and afterwards the wife obtained a divorce *a mensa et thoro*. Subsequently the husband went to Michigan and obtained a decree of divorce *a vinculo*, on a charge of willful desertion; the wife not having appeared, nor having notice, except by publication in a newspaper of that state ; *Held* that the divorce was a nullity.

And the husband having married again in this state, a divorce was granted on the petition of the wife, for adultery.

*It seems*, that if the parties appear, in a suit for a divorce in another state, and there is litigation upon the merits, and there is no fraud or collusion, a decree of divorce would be conclusive, without reference to the *lex loci contractus*, or the domicil of the defendant, or the *locus delicti*.

The solemnities of different nations with respect to marriage should be observed, and the validity of this contract should be determined by the laws of the country where it is made.

But *it seems*, there is an implied agreement that the marital obligation shall always be regulated by the law of the state or country where the parties shall acquire domicil.

Domicil of the husband is that of the wife, and a change of the former, as a general rule, changes that of the latter.

But if the husband and wife are living separate, by the decree of a competent court, a change of the domicil of the husband does not change that of the wife.

A change of domicil requires no certain length of time; nor is length of time alone sufficient. There must be a *bona fide* and permanent attempt, *animus et factum*.

Vischer *v.* Vischer.

THIS was a suit for a divorce *a vinculo matrimonii,* for the adultery of the defendant. The parties were residents of and married in this state, on the 10th day of January, 1844 ; and for a time cohabited as man and wife here, during which there was issue one child, now living. But some difficulty arising, the plaintiff filed a bill in the court of chancery of this state, to obtain a decree of separation ; which was granted, and entered on the 30th day of March, 1846. The decree was proved in this cause before the referee, by which it appeared, that upon the bill, answer and replication and proofs, and on filing a written stipulation of the respective solicitors, separation from bed and board, forever, was decreed ; and neither party had leave to marry again, during the lifetime of the other ; but the parties might apply to modify or discharge the decree. The decree further provided, that the plaintiff should have the custody of the child for ten years, during which the defendant was to pay a certain sum for its support. The property of the plaintiff also was restored to her ; she to pay her own debts and release all claim to dower, &c.

On the 11th day of May, 1850, the defendant applied to the circuit court in the county of Wayne, in the state of Michigan, in chancery, for a divorce, which was granted on the 5th day of December, 1850. The proceedings and decree in that suit were proved ; and the statute of that state admitted ; by which it appeared that a divorce *a mensa et thoro* could there be obtained for various causes, and among others for desertion two years. And the court, in their discretion, could grant a divorce *a vinculo,* for the same causes. The plaintiff must have resided in that state one year immediately preceding the time of exhibiting his bill ; and it was admitted that the defendant in this cause had been a resident there for that time before so filing his bill of complaint. In that bill he alledged the necessary residence ; that the parties were married in this state, and that the present plaintiff had willfully deserted him and left his bed and board against his will and consent, and had refused, on request, to return to him ; had remained apart from him from the time of such desertion, as well during his residence in this state as after

his removal to Michigan; that such desertion had continued more than three years, and that she continued to reside in this state. The statute of Michigan further provided for taking the bill as confessed against an absent defendant who does not appear within a certain time after notice by publication in a newspaper in the county where the proceedings were pending; which was done in that case, and proofs were taken before a master and a decree entered. The present plaintiff did not appear there, nor was any process served upon her, or personal notice given. A copy of that decree was given in evidence, which recited that the cause came on for argument upon the bill of complaint taken as confessed and upon the report of the master, and proofs, by which it satisfactorily appeared that the material facts charged in the bill were true, and the defendant in that suit had been guilty of desertion as charged; whereupon it was adjudged and decreed " that the marriage between the said complainant Nicholas F. Vischer and the said Margaret Vischer be dissolved and the same is hereby dissolved accordingly; and the said parties and each of them is freed from the obligations thereof." And it was further adjudged and decreed, "that it shall and may be lawful for either the said complainant Nicholas F. Vischer or the said Margaret Vischer, to marry again, in the same manner as though the other was actually dead."

On the 23d day of January, 1851, the defendant, at Albany in this state, married one Mary Lansing, with whom he had been living as man and wife ever since. The answer in this cause averred that he had been a resident of Michigan from the time of his removal to that state. There was no proof on this subject, except that one witness testified that he and Mary Lansing boarded with her in Saratoga county about two months after the marriage. The complaint alledged that the plaintiff left the defendant, and afterwards filed her bill for separation, because of unkind and cruel treatment. This was denied by the answer, but it was admitted that a bill was filed. Its contents did not appear.

Vischer *v.* Vischer.

*P. Potter*, for the plaintiff.

*J. K. Porter*, for the defendant.

HAND, J. This cause, unfortunately, brings not only the laws of this, in conflict with those of a sister state ; but is of vital importance to more than the immediate parties. Probably the peace and welfare of a third party, relying upon the decree of the court in the state of Michigan, is involved in the present controversy.

The domicil of the husband is *prima facie* that of the wife. ( *Whitcomb* v. *Whitcomb*, 2 *Curties*, 351. *Jackson* v. *Jackson*, 1 *John.* 425. 2 *Kent*, 431, *n.*) And usually, a change of that of the former, changes the latter. But if separated by a decree of a competent court, and the wife remains in the same place, it seems to me, that that presumption is rebutted as to any new domicil subsequently acquired by the husband. Beside, the wife, here, is proved and admitted to have actually been an inhabitant of this state at the time of her marriage, and ever since. Some have supposed domicil, inhabitancy, and residence, to be synonymous terms. Others maintain there is sometimes a distinction. (*See In re Wrigley*, 8 *Wend.* 134 ; *Crawford* v. *Wilson*, 4 *Barb.* 520. *See Frost* v. *Brisbin*, 19 *Wend.* 13 ; *Roosevelt* v. *Kellogg*, 20 *John.* 210 ; 2 *Kent*, 430, *n. e ;* 8 *Cranch*, 253 ; *Laud* v. *Smith*, 15 *M. & W.* 433.) However that may be, I have no difficulty in saying that. for all practical purposes, the domicil of the plaintiff was not in Michigan. It was admitted on the trial that the defendant was a resident of Michigan at the time he commenced proceedings there. Whether in the strict sense of the term, his domicil was there, is not stated. It is said the place of residence is *prima facie* the place of domicil. ( *Guier* v. *O'Daniell*, 1 *Binn.* 349. 2 *Kent*, 430, *n.*) And a change of domicil requires no certain length of time, and length of time alone is not sufficient. There must be a *bona fide* and permanent intent—*animus et factum.* Until these concur, the old domicil remains. (*Somerville* v. *Somerville*, 5 *Ves.* 750, 787, *and Perk. note.* 3 *Id.* 203, *and notes. Craigie* v. *Lewin*, 7 *Jur.* 549. *The Frances*, 8 *Cranch*, 363. *Williamson* v.

*Parisien,* 1 *John. Ch.* 392. *Story's Confl. of Laws,* § 47. *In re Wrigley,* 8 *Wend.* 134. *Att'y Gen.* v. *Dann,* 6 *M. & W.* .511.) It seems the defendant returned pretty soon after the decree was entered in that state, and remained here at least some time, after his second marriage ; and perhaps the case is not clear of suspicion that there has been no *bona fide* change of domicil. If the defendant went to another state for the purpose of obtaining a divorce, it was in *fraudem legis* and unavailing ; certainly if for a cause for which no divorce could be obtained here. (*Jackson* v. *Jackson,* 1 *John.* 425. *Borden* v. *Fitch,* 15 *Id.* 121.)

But admitting that the defendant had his domicil *bona fide* in Michigan, I do not see how the divorce granted there can be sustained by our courts. It is invalid, on the grounds both of fraud and want of jurisdiction. Fraud, because the allegation of desertion was not true ; and want of jurisdiction, because there was no service of process upon, or appearance of, the wife. If *Borden* v. *Fitch* is law, it decides both of these points against the defendant. The parties were living separately under and in pursuance of a decree of a competent court having jurisdiction. When that decree was pronounced, the parties had their domicil here. This was the *locus contractus,* and *locus delicti ;* and the court had jurisdiction of the person and subject matter ; and, besides, judgment was given in pursuance of a stipulation. The decree of separation was therefore valid. How then could the husband say that his wife " had willfully *deserted* him, and left his bed and board against his will and consent ?" The contract of marriage made here, had been modified by a decree, the validity of which, would have been recognized there. Had the defendant presented the whole case to the Michigan court, no doubt his application would have been denied. By his own showing, he would not have made a case under their statute. It was fraudulent to suppress and misstate the facts. (*Borden* v. *Fitch, supra. Jackson* v. *Jackson, supra.*)

But the court there acquired no jurisdiction. No process was served upon or notice given to the wife, except by publication in a local newspaper. In *Jackson* v. *Jackson,* our supreme

Vischer *v.* Vischer.

court intimated that an appearance by the other party, would not give the court of a sister state jurisdiction to dissolve the marriage, for causes for which it could not be dissolved, in this state. That dictum has been doubted. (*Cowen & Hill's Notes,* 878.) The record of a court of a sister state, in case of appearance, is generally conclusive. (*Mills* v. *Duryee,* 7 *Cranch,* 481. *Starbuck* v. *Murray,* 5 *Wend.* 148. *Noyes* v. *Butler,* 6 *Barb.* 613, *and cases there cited.*) The effect of a foreign divorce is a vexed question. In England, the contract is indissoluble, except by parliament. In Scotland, it is by law *quam diu se bene gesserint ;* and it has been decided that an English marriage could not be dissolved in Scotland. (*See Lolley's case,* 1 *Dow. P. C.* 124, 136 ; 1 *Russ. on Cr.* 190 ; 2 *Cl. & Fin.* 567, *n. ; Lacon* v. *Higgins, Dowl. & Ryl.* 38, note 1 ; *Macarthy* v. *Decaix,* 2 *Russ. & Mylne,* 614 ; *Tovey* v. *Lindsay,* 1 *Dow. R.* 117 ; *Sinclair* v. *Sinclair,* 1 *Hagg. C. R.* 294 ; *Schrimshire* v. *Schrimshire,* 2 *Id.* 395 ; *Herbert* v. *Herbert,* 3 *Phill.* 58, *and see reports of several Scotch cases by Ferguson,* 3 *English Eccl. Rep.*) Some more recent cases seem to hold that such divorces are valid. (*Warrenden* v. *Warrenden,* 9 *Bligh,* 89. *Birtwhistle* v. *Vardill, Id.* 72 ; *S. C.* 5 *Barn. & Cress.* 438. *And see Conway* v. *Beazley,* 3 *Hagg. C. R.* 639 ; 2 *Smith's L. Cas.* 448, 456.) *Birtwhistle* v. *Vardill,* was ejectment for lands in England by ante-nuptial offspring claiming as heir, by virtue of the Scotch marriage. The king's bench was clearly against the action, but a re-argument was ordered in the house of lords. *Warrenden* v. *Warrenden,* seems to overrule *Lolly's case,* but is distinguishable. The general rule is, that the law of the country where the contract is made, or where it is to be performed, furnishes the rules for expounding the nature and extent of its obligation ; but the law of the country where it is sought to be enforced, governs all questions as to remedy and mode of proceeding. (*Andrews* v. *Herriot,* 4 *Cowen,* 508, *and notes. Lodge* v. *Phelps,* 1 *John. Cas.* 139. *Comm. of Ken.* v. *Bassford,* 6 *Hill,* 526. *Hyde* v. *Goodnow,* 3 *Comst.* 266. *Ferguson* v. *Fyffe,* 8 *Clark & Fin.* 121. *Anstruther* v. *Adair,* 2 *Myl. & K.* 513. *Dues* v. *Smith, Jacob,* 544. 2 *Kent,* 92.

---

Vischer *v.* Vischer.

---

*Connelly* v. *Connelly,* 14 *Jur.* 437 ; *S. C.* 2 *Eng. L. & E. Rep.* 570. *Ryan* v. *Ryan,* 2 *Phill.* 332. *Decouche* v. *Savetier,* 3 *John. Ch. Rep.* 211. *Schrimshire* v. *Schrimshire supra. Herbert* v. *Herbert, supra.*) *Connelly* v. *Connelly,* decided in the Arches court, in 1850, was a suit by the husband for restitution of conjugal rights. The parties, who were then protestants, and members, the husband being a clergyman, of the Episcopal church, were married in Philadelphia, and residents of the United States ; and afterwards, embracing Catholicism, went to Rome and resided there, and the husband was ordained a priest of the Romish church. While at Rome, a rescript or decree of the authorities at Rome, was obtained, which was claimed and pleaded to be, in effect, a separation. Both afterwards went to England, where the wife became a superioress of a convent. The court overruled the plea ; and held that the parties were subject to the laws of Rome, only while there ; and that they did not carry that law with them to England. He said, " we all know, that in questions of marriage contract, the *lex loci contractus* is that which is to determine the *status* of the parties." That " by consent of all nations, it is the *jus gentium,* that the solemnities of the different nations, with respect to marriages, should be observed, and that contracts of this kind are to be determined by the laws of the country where they are made." Now, if it is implied that the contract shall not be dissolved by the courts of another state, except for causes allowed by the law of the state where it was made, a divorce by the courts of another state for any other cause would, perhaps, be impairing the obligation of a contract. But this contract is somewhat peculiar, and perhaps that is an implied agreement, that the marital obligation shall always be regulated by the law of the state or country where the parties shall acquire a domicil ; and their rights, duties and obligations, from the relation of husband and wife, be defined by the municipal law of that domicil. The validity of the marriage, of course, depends upon its conformity to the *lex loci contractus.* And perhaps if the parties are both residents here and intend to continue so, it is hardly reasonable to say, that a marriage *in transitu* or *in*

Vischer *v.* Vischer.

*itinere,* in another state, in which divorces are granted for minor causes, is an agreement that the marriage shall be dissoluble for those causes. Being a civil contract, it may be said, it is to be performed in any place where the parties shall afterwards voluntarily reside, *animo manendi.* Our courts acquire jurisdiction in the cases under the regulations prescribed by our own statutes. (2 *R. S.* 144. *Johnson* v. *Johnson,* 4 *Paige,* 467. *Decouche* v. *Savetier,* 3 *John. Ch. Rep.* 211. *Mix* v. *Mix,* 1 *Id.* 204. *Williamson* v. *Parisien,* 1 *Id.* 392. *And see Dartmouth College* v. *Woodward,* 4 *Wheat.* 418; *Barber* v. *Root,* 10 *Mass. Rep.* 265 ; *Story's Confl. of Laws, ch.* 7.) And whatever may be the rule in respect to divorces granted by the courts in other countries, I am inclined to the opinion, that a divorce granted by the courts of one of our sister states, after appearance; or, if the parties are domiciled there, after personal service, there being no fraud or collusion, would be conclusive here. And it may be doubted, in case of an appearance and litigation on the merits, whether proof of the domicil of the parties or the *lex loci contractus,* or the *locus delicti,* would affect the decree. However, the decree of divorce in Michigan is invalid, on the ground just suggested. It is a sound principle of law, as well as of natural justice, that no person should be bound by a judgment without an opportunity to be heard. (*Kilburn* v. *Woodworth,* 5 *John.* 37. *Robinson* v. *Executors of Ward,* 8 *Id.* 86. *Fenton* v. *Garlick,* 8 *Id.* 197. *Hollingsworth* v. *Barbour,* 4 *Peters,* 466. *D'Arcy* v. *Ketchum,* 11 *How. U. S. Rep.* 165. *Starbuck* v. *Murray,* 5 *Wend.* 148. *Shumway* v. *Stillman,* 6 *Id.* 447. *Johnson* v. *Hunt,* 23 *Id.* 87. *Noyes* v. *Butler,* 6 *Barb.* 613. *Chit. on Contracts,* 684, *note* 2, *Perkins' ed.*) And this rule has been applied here, in cases of foreign divorce. (*Borden* v. *Fitch,* 15 *John.* 121. *Bradshaw* v. *Heath,* 13 *Wend.* 407. *And see Pawling* v. *Bird's Ex'rs,* 13 *John.* 192.) In *D'Arcy* v. *Ketchum,* the supreme court of the United States held a judgment against an absent partner, under our statute allowing judgments in form against an absent joint debtor, was void. Proceedings *in rem,* that is, when they strictly pursue the spe-

cific property, may be sustained ; but it is doubtful whether the courts can do more.

The plaintiff is entitled to a divorce *a vinculo matrimonii,* and to alimony. And the child must remain in her custody until the expiration of the time fixed in the former decree of separation ; after which period, his custody may be a subject for the further consideration of the court.

Decree accordingly.

[SCHENECTADY SPECIAL TERM, November 10, 1851. *Hand,* Justice.]