SARAH B. HUNT, Appellant, *v.* WILLIAM H. HUNT, Respondent.

*Divorce — domicile of parties — personal service — when dispensed with — jurisdiction of court.*

A husband domiciled in Louisiana applied for a divorce in that State from his wife, on account of ill treatment received from her. The marriage took place in that State, and the offense was there committed. At the time of the commencement of the suit the wife had left her husband, and was then living with his consent in another State. In accordance with the laws of Louisiana a *curator ad hoc* was appointed to appear for and defend the interests of the wife, who was herself never served with any process, and thereafter a divorce was granted to the husband. *Held*, that the divorce was valid and binding in this State as well as in Louisiana, and that the jurisdiction of the court to render the judgment was not affected by the fact that the wife was never personally served, and that she did not appear in the action.

A court acquires jurisdiction of an action against an absentee domiciled in the State in which the court is situated, where such absentee is served by publication as prescribed by the laws of such State, and a judgment rendered in such action is valid in all other States and countries.

Where, at the time of the separation of a wife from her husband, the laws of the State of their domicile provides that no divorce *a vinculo* shall be granted on account of ill treatment, until the expiration of a certain time after the entry of a decree of separation, the legislature has power to alter such law and allow a divorce *a vinculo* to be granted in the first instance, although the ill treatment occurred prior to the passage of the latter act.

Appeal from a judgment dismissing the complaint herein, entered upon the trial of this action by the court without a jury.

The action was brought to procure a divorce on the ground of adultery. The defendant, claiming to have been divorced from the plaintiff by a judgment duly obtained by him in the State of Louisiana, subsequently married again, whereupon his first wife brought this action to procure a divorce.

*John K. Porter* and *D. D. Lord*, for the appellant.

*E. W. Stoughton*, *W. D. Hennen* and *G. Tillotson*, for the respondent.

Barrett, J.:

The question in this case is, whether the court in Louisiana had jurisdiction of the person and the subject-matter. If it had, then, under the Constitution and laws of the United States, the same effect should be given to its judgment by the courts of this State as it would have in Louisiana. (*Dobson* v. *Pearce*, 12 N. Y., 167; *Kinnier* v. *Kinnier*, 45 id., 541.)

As to the person, the record shows, and it is conceded, that there was neither a personal service of process nor a voluntary appearance. Was the court for that reason without jurisdiction? That depends very much upon the facts. The parties were married in Louisiana, where at the time they both resided. They lived together in New Orleans for upwards of three years, when a non-judicial separation took place, Mrs. Hunt leaving her husband's house, and departing from the State of Louisiana with his consent, but of her own free will. About a year subsequently, Mr. Hunt

commenced the suit in question. It proceeded upon the theory that while he was present and she absent, both were *domiciled* in the State. Under the laws of Louisiana, an absentee is proceeded against, not by publication, but by the appointment of a *curator ad hoc*, whose duty it is to communicate with the defendant, if practicable, and to appear for and defend him. Upon a suggestion (allowed by Louisiana practice), a *curator ad hoc* was appointed, and the cause proceeded to judgment upon his appearance and answer.

The testimony is overwhelming that, under the laws of Louisiana, jurisdiction of the person was acquired by the appointment of the *curator ad hoc*, and that the proceedings were entirely regular, and the decree valid.

There are many authorities in this State in which it is asserted, that juridiction in this class of cases cannot be acquired by publication, by posting, by personal service outside of the State, or otherwise than by an authorized appearance or personal service within the jurisdiction. (*Borden* v. *Fitch*, 15 Johns., 121; *Vischer* v. *Vischer*, 12 Barb., 640; *Bradshaw* v. *Heath*, 13 Wend., 407; *Holmes* v. *Holmes*, 4 Lans., 388; *Kerr* v. *Kerr*, 41 N. Y., 272; *Hoffman* v. *Hoffman*, 46 id., 30.)

In all of these cases, however, it will be found that the facts with respect to notice were grouped with other jurisdictional facts, such as the absence of an actual and *bona fide* residence, or a resort to the foreign State for the purpose of evading the law of the domicile. Thus in *Borden* v. *Fitch* and *Vischer* v. *Vischer* the husband, whose domicile was in one State, repaired to another, and suppressing the fact that his wife was living apart from him under the sanction of the law of the domicile, procured a divorce *a vinculo*, upon the ground of willful desertion. In *Bradshaw* v. *Heath*, the parties were married in Connecticut, but soon afterwards changed their domicile to New York. The wife, without any judicial separation, returned to Connecticut and obtained a divorce upon grounds not admissible in New York. In *Holmes* v. *Holmes*, the Iowa court was without jurisdiction of the subject-matter as well as of the person. The offense, insufficient in itself to warrant a divorce *a vinculo* under our laws, was committed here before the plaintiff became a resident of Iowa, and while both par-

ties were domiciled in this State. In *Kerr* v. *Kerr* and *Hoffman* v. *Hoffman* there was no residence in Indiana as required by the laws of that State.

In none of these cases was the defendant amenable to the laws of the State where the divorce was obtained.

Statutes authorizing the service of process by publication or other equivalent means have for their main object efficient judicial action *in rem.*, or *quasi in rem. ;* that is, by attachment nominally *in personam*, but practically *in rem.* Apart from this, their purpose is not to enable courts to draw within their jurisdiction persons residing elsewhere, who have never violated the laws of such courts, State or country. It is rather to prevent those who, while within the boundaries of such State or country, have transgressed against its laws, from escaping the penalties attached to their offenses, by withdrawing from the jurisdiction of its courts, or by concealment within such jurisdiction.

Provision for service by publication in actions for divorce is made by our own Code (§ 135), and for substituted service by chapter 511 of the Laws of 1853 (as amended). Those provisions do not furnish the means of evading, nor even of enforcing the divorce laws of other States. They certainly, upon proper compliance with their terms, clothe our courts with jurisdiction over absentees, or avoiders of process who have, either here or elsewhere, but while domiciled in this State, violated the laws of such domicile. What is sought is to prevent the evasion, and to render effective the administration of our own laws. If, for instance, while the present parties were yet living together in New Orleans, Mr. Hunt had come into this State and filed a bill against his wife for offenses committed in Louisiana, it is quite clear that our courts could not have acquired jurisdiction over the person by publication under section 135 of the Code, and any judgment resulting from such a procedure would have been utterly void, and indeed it would have been void *here* as well as in Louisiana. If, however, the parties had been domiciled and the offense committed here, Mrs. Hunt could not have escaped the jurisdiction of our courts by absenting herself from this State, and Mr. Hunt would not have lost his remedy by permitting her to depart, without first serving a summons. In just such a contingency he would have a right to

resort to a publication under section 135, and if his proceedings were regular thereunder, the judgment would be valid, and valid in Louisiana as well as here, unless the Constitution and the laws of the United States are to be disregarded.

Were it otherwise, practical immunity would be afforded to the guilty. To cheat the injured party of his or her remedy under the laws of the domicile, it would only be necessary for the offender to escape the process server, and secure an asylum in another jurisdiction.

Pursuit and an attempt to create a fresh domicile would not improbably result in fresh flight, or on the discovery, perhaps, of severer laws on the subject of divorce.

Nor are we without authority upon this point. "To entitle the court to take jurisdiction," says Bishop (Marriage and Divorce, §§ 727, 729), "it is not necessary that the citation *when the domiciled party is plaintiff* should be served personally upon the defendant, if such personal service cannot be made  *  *  *  If the wife commits an offense which entitles the husband to a divorce, *and he brings his suit in his own jurisdiction*, while she is found in another, it seems clear upon principle, as it appears settled by authority, that she cannot set up her own offense in answer to his claim ; and since she is bound to follow him, *his domicile must, for the purposes of the litigation, be taken as against her, to be hers also.* This principle has been carried to the extent of avoiding any mere technical objection to the courts *taking jurisdiction* of the *husband's cause, when the wife has been in fact dwelling in another country.*" Again, at section 732 : "Unless the judicial tribunals give effect to each other's decrees rendered under these statutes (*as to publication*) *in favor of bona fide subjects*, we shall be in a most distressing condition of conflict and confusion."

In *Harding* v. *Alden* (9 Greenlf., 140), the Supreme Court of Maine upheld a Rhode Island divorce where the process was not served within the State. "If we refuse," said the court, " to give full faith and credit to the decree of the Supreme Judicial Court of Rhode Island, because the party libeled had his domicile in another State and was not within their jurisdiction, we refuse to accord to the decrees of that court the efficiency we claim for our own, when liable to the same objection."

" This decision, says Bishop (§ 736), received the commendation of Chancellor Kent, and the doctrine it lays down is that best sustained by authority."

The same doctrine was maintained in *Hood* v. *Hood* (11 Allen [93 Mass.], 199); *Ditson* v. *Ditson* (4 Rhode Island, 109); *Mansfield* v. *McIntyre* (10 Ohio, 29); *Harrison* v. *Harrison* (19 Ala., 499); *Thompson* v. *The State* (28 Ala., 13); *Hull* v. *Hull* (2 Sirobhart's Eq. R. [South Carolina], 174); and *Tolen* v. *Tolen* (2 Blackf., 407).

In *Hood* v. *Hood*, the domicile of the husband was in Illinois, when he filed his libel. His wife resided in Massachusetts. The Massachusetts Supreme Court held that the mere fact of her residence in that Commonwealth separate from her husband, whether with or without his consent, had no tendency to establish such a change of domicile and that, consequently, both parties had their domicile in Illinois where the libel was filed. "The notice," remarked Hoar, J., "given to the respondent in that suit, was such as the laws of Illinois authorized in the case of an absent defendant, and such as by the laws of this Commonwealth is made valid and sufficient in like cases."

The remarks of the Rhode Island and Alabama judges are equally pertinent. Speaking of the foreign jurisdiction, the court, in *Ditson* v. *Ditson*, uses this language: "Its courts may and can act conclusively upon the rights and interests of such persons (non-residents, foreigners or domiciled inhabitants of other States), giving to them such notice, actual or constructive, as the nature of the case admits of, and the practice of courts in similar cases sanctions." (Pages 107, 108.)

In *Thompson* v. *The State*, the Alabama court passed its judgment upon the ground that "the rule" (as to the ordinary method of acquiring jurisdiction) "does not apply to decrees rendered on publication against non-resident defendants, the validity of which depend on the statutes of the State in which they were rendered, and results necessarily from the exercise of the jurisdiction;" while in *Harrison* v. *Harrison* still stronger language was used: "We have seen that inasmuch as the case of complainant arose or took place here, and the plaintiff in error was made a party to the bill in the mode pointed out by our law, the decree is binding on her though she resided out of the State and did not

have actual notice of the suit. To hold otherwise would not only be productive of disastrous consequences, but it would deny to our legislature the power to pass laws enabling the courts of this State to render a decree against an absent defendant, who was not personally served with process, although the cause of complaint arose here."

In the present instance, the marriage contract was made in Louisiana, the offenses were committed and the parties were domiciled there.

By article 39 (48) of the civil code of Louisiana (approved March 14, 1870), it is provided that " a married woman has no other domicile than that of her husband." Such too was the previous law of that State, and it appears from the testimony that there is no exception to the rule. Even where the wife, who sues for a separation, leaves her husband's residence, she is obliged, until the determination of the suit, to dwell in a house assigned to her by the judge.

The general rule at common law is, that the domicile of the husband is the domicile of the wife. She may, however, as was said by SWAYNE, J., in *Cheever* v. *Wilson* (9 Wallace, 109), " acquire a separate domicile whenever it is necessary or proper that she should do so."

The law is the judge nevertheless of the necessity and propriety of her action, and the true test is, whether the conduct of the husband was such as to justify the wife in applying for a divorce or a judicial separation. (Bishop, §§ 728, 730; *Kinnier* v. *Kinnier*, 45 N. Y., 544; *Hood* v. *Hood*, 11 Allen, 199; *Barber* v. *Barber*, 21 How. [U. S.], 593, *et seq.*; *Greene* v. *Greene*, 11 Pick., 410; *Harteau* v. *Harteau*, 14 id., 181; *Ditson* v. *Ditson*, 4 Rhode Island, 10.)

There is no pretense that Mrs. Hunt separated from her husband with a view to legal proceeding or the assertion of any separate interests, nor that Mr. Hunt had so conducted himself as to justify her in acquiring a separate domicile.

In States, therefore, the foundation of whose jurisprudence is the common law as well as where the civil law governs, there is no doubt that when the Louisiana proceedings were instituted Mrs. Hunt was an absentee, *domiciled in that State*. The language of Mr. Burge (3 Burge's Col. and For. Laws, 1056) thus becomes peculiarly applicable to her case: " If the place in which the suit was insti-

tuted was that of his domicile * * * he may be said to owe such allegiance and submission to its laws, as to be subject to the species of citation which its laws have ordained * * * a citation, therefore, under those circumstances, although at the time it takes place he may be absent from the country, is not necessarily so repugnant to the principles of natural justice that a foreign tribunal should refuse to recognize it and treat a sentence founded on it a nullity."

Mrs. Hunt was amenable to the laws of Louisiana. There was but one way in which the courts of that State could acquire jurisdiction over her, and that was by the appointment of a *curator ad hoc*. By such appointment then, in accordance with the laws and practice of the State, *jurisdiction was acquired*.

A special objection was made to the appointment of the *curator ad hoc*, upon the ground that the record did not disclose the evidence upon which the Louisiana court acted in making it. The fact that Mrs. Hunt was an absentee is conceded, but it is insisted that a verified petition, stating such fact, should have been filed *and made part of the record*. The fact gave the court jurisdiction to make the order; the method of ascertaining the fact was a mere detail of practice. Besides, the testimony of several eminent members of the bar of Louisiana abundantly establishes the validity of the appointment.

Under the laws and practice of the courts of that State, such appointment may properly be made either upon an averment in the petition for divorce, or upon a separate petition, or upon suggestion. True, as argued, it is not competent to contradict or *add to* a record (*Noyes* v. *Butler*, 6 Barb., 617), but it may be explained (2 Cow. & Hill's notes, 839, 779; *Manny* v. *Harris*, 2 Johns., 24; 1 Phil. Ev., 317); and reading the record in the light of the law of Louisiana and the well established practice of its courts, is a very different thing from supplying defects in respect to jurisdictional facts by evidence *aliunde*.

It is simply a means of ascertaining what effect would be given to it in the State of Louisiana, to the end that "the same faith and credit" may be given to it here. Even in our own courts, the affidavits filed upon obtaining an order of publication are not a necessary part of *the judgment roll*. The summons and complaint, *order* and *proof of publication*, of mailing and of no appearance,

order of reference, referee's report, proofs and judgment would make a sufficient roll under section 281 of the Code. Further, in the record under consideration the fact of Mrs. Hunt's absence sufficiently appears. In the petition it is averred that she left the petitioner's house upwards of a year previously and has ever since lived apart from him, and he prays that she be authorized to defend the suit, and that she be cited, through an attorney appointed to represent her, to appear and answer the petition.

This is followed, later, by the reasons for judgment filed by the judge, which are analogous, not to an opinion, but to our findings of fact and conclusions of law; and there it is found as follows: "And the court considering * * * that the defendant herein was not in the State of Louisiana *at the time this suit* was *instituted*," etc.

Next, as to the subject-matter: It appears that the court was one of general jurisdiction. In *Kinnier* v. *Kinnier* (*ubi sup.*), CHURCH, Ch. J., uses the following expression: "The court had jurisdiction of the subject-matter of the action, that is, *it had jurisdiction to decree divorces according* to the law of *that State.*" So had the Louisiana court. It is claimed, however, that, under the Constitution and laws of that State, the court was not authorized to grant a divorce for the causes specified in the petition. Under their laws, at the time of the separation, a husband or wife who had suffered from ill treatment of such a nature as to render matrimonial life insupportable, was not entitled to a divorce *a vinculo* until a stated period had been afforded for the possibility of reconciliation after a decree of separation. In 1870 an act was passed doing away with this intermediate delay, and allowing a direct divorce for substantially the same causes. Additional words were used, viz.: "Such misconduct repugnant to the marriage covenant as permanently destroys the happiness of the petitioner." This, however, was but another form of expressing ill treatment of such a nature as to render their living together insupportable, or, at most, it was an amplification of the previous provision.

The plaintiff's complaint therefore is: First, that by this legislation she was deprived, unconstitutionally, of the right of seeking a reconciliation for a given period, and thus of preventing the decree of separation from ripening into an absolute divorce; and, second,

that the act of 1870 was repealed, and the place of reconciliation restored, before the filing of the petition.

The answer to the first is, that the law of 1870 " did not," as was said in *Clark* v. *Clark* (10 N. H., 380), " confer authority upon the court to grant a divorce for matters already passed, and which, at the time they occurred, furnished no ground for the dissolution of marriage."

Nor did the Louisiana court attempt to exercise any such authority. The courts of that State, for years before the passage of the act of 1870, possessed *ultimate* authority to grant an absolute divorce for ill treatment of such a nature as to render matrimonial life insupportable, and in the present instance it was substantially averred in the petition, and found by the court, that Mr. Hunt had received such ill treatment at the hands of his wife. The legislature had undoubted power to regulate the method of procedure, that is, the mode of attaining the ultimate remedy. The force of the objection would only be lessened in degree, if the alteration in the law had simply been a reduction of the time to answer from one year to twenty days, or the abrogation of a prohibition against a decree *nisi* ripening into a decree absolute, until after the lapse of one year. The cases which have been pressed upon our attention (*Clark* v. *Clark, ubi sup.; Given* v. *Marr,* 27 Maine, 212, 222; *Sherburne* v. *Sherburne,* 6 Greenlf., 211), in substance, denying the validity of statutes attaching a penalty to offenses committed prior to their passage, are therefore inapplicable.

With respect to the second ground of complaint, the act of 1870 was not expressly repealed and a careful consideration of all the statutes leads to the conclusion that it was not repealed by implication.

It is true that the provisions of the revised civil code and of the Revised Statutes subsequently passed, if they stood alone, would seem to revive the prohibition against granting a divorce until the expiration of one year from the date of the judgment of separation. But it was previously declared (Bill No. 50), that all the acts of that session which should be contrary to or in any manner conflict with these revisions should have precedence, and " be held as the law in opposition thereto and as repealing those acts so far as they may be in opposition or conflict." Undoubtedly the legislature

was not bound by this act. It could of course be repealed, but the question is one of intent, and there can be no doubt that the act was passed and retained in order to facilitate the passage of these important revisions, and to avoid the detail incident to going through their elaborate provisions with a view to harmonizing each and every section with the special enactments of that particular session. Such, too, has been the construction given to these acts by the Supreme Court of Louisiana. (*In the succession of Winn*, 25 Lou. An. R., 216; *Nichol* v. *Weil*, id., 208.)

In considering, collaterally, the exercise of a jurisdiction which can only be questioned by a strained construction of the intent and meaning of several statutes, the conclusions arrived at by the highest court of a sister State in a direct proceeding may well be treated as final. Upon the facts before the Louisiana court it had power to decide the question of jurisdiction over the subject-matter, and again, to quote the language of Chief Justice CHURCH, in *Kinnier* v. *Kinnier*, "the judgment is not void if we concede that the decision was erroneous, and if it is also conceded that the question (of *residence* in that case) is vital to give jurisdiction. A wrong decision does not impair the power to decide, or the validity of the decision when questioned collaterally."

It would certainly be a strange and painful phase of State comity if a citizen who, in reliance upon the construction placed upon the laws of his domicile by the tribunals of such domicile, had formed an honorable matrimonial connection, should be told by the courts of a sister State that, according to their construction of the same laws, such connection was adulterous.

There remains the question of fraud. The charge upon that head is, that Mr. Hunt, in his petition, suppressed the fact that his wife had left him *with his consent;* and further, that he gave testimony in the cause contrary to the laws of Louisiana. It appears, however, that the exact facts with respect to the separation were laid before the court prior to the granting of the decree. This was done by Mr. Hunt's own testimony, which may have been inadmissible, but can scarcely, under such circumstances, be deemed fraudulent. There is really nothing in this point. There was sufficient testimony without Mr. Hunt's, and there is no reason to believe that it was considered upon the main question of ill

treatment. The proceedings were entirely open and above board. Mrs. Hunt was formally notified, by letter, of her husband's intention to "obtain the sanction of the law to the severance of the marriage tie." The *curator ad hoc* communicated with her father, who was himself an old lawyer. She was perfectly cognizant of the proceedings, and consulted with counsel in New York.

Communication by letter was also had with an eminent legal gentleman in New Orleans. Ample time was given for the fullest consideration of the situation, and the result was the determination *not to appear*. It is certainly significant that, at this critical juncture, it was deliberately decided to speculate upon the question of jurisdiction rather than attempt a defense upon the merits.

For these reasons, we are of opinion that the decree of divorce is valid, and that the judgment of the Special Term, upholding it and dismissing the plaintiff's complaint, should be affirmed, with costs.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed, with costs.