
4L 388
60ad602
Lansing.
4L 388
62ad447

CHARLES HOLMES, Appellant, v. SARAH A. HOLMES, Respondent.

(GENERAL TERM, THIRD DEPARTMENT, DECEMBER, 1871.)

A decree of divorce, a vinculo matrimonii, granted in Iowa, for cruel and inhuman treatment and desertion, before the plaintiff has obtained a residence in that State, the cause occurring while the parties were domiciled here, and the defendant never having resided in Iowa, is not valid for any purpose here.

It seems, every State may dissolve the marriage relation of all its domiciled inhabitants, for cause occurring anywhere, while the domicil continues, and, in such a case, that the jurisdiction of the State court is, at common-law, exclusive.

Service of the process of an Iowa court, in this State, gives no jurisdiction to such court to decree a divorce.

The party obtaining an invalid decree of divorce is not estopped from calling it in question.

THIS was an appeal by the plaintiff from an order overruling his demurrer to the plea of the defendant. Facts material to the decision appear in the opinion.

E. H. Prindle, for the plaintiff.

H. R. Mygatt, for the defendant.

Present — MILLER, P. J., HOGEBOOM and PARKER, JJ.

By the Court — PARKER, J. The plea to which the plaintiff has demurred shows two things, either of which, I am inclined to think, is sufficient to make the Iowa decree of divorce invalid and inoperative in this State.

1st. That the action for the divorce a vinculo matrimonii, in Iowa, proceeded entirely upon the ground of cruel and inhuman treatment, and final desertion, by the defendant, while the parties were domiciled in Columbus, in the State of New York, and before the plaintiff became a resident of the State of Iowa, the defendant never having resided there; and,

Holmes *v.* Holmes.

2d. That the only service of process or notice, in that suit, upon the defendant, was at Columbus aforesaid, and that no appearance was put in by or for her in the suit.

In regard to the fact first above mentioned, I cannot agree to the proposition that a party domiciled in this State, desiring a divorce *a vinculo*, for a cause, occurring here, for which such a divorce will not be granted by the laws of this State, can remove to another State, where the act complained of is legal cause for such divorce, and then, upon the ground of such act, occurring here, before his becoming domiciled there, obtain the decree, and then return to this State and use it here for any purpose.

The act complained of was, when committed, no ground of legal complaint, and exposed the party committing it to no such penal consequences. How, then, does it become ground of legal complaint, by the removal of one or both the parties to the State of Iowa, although, if committed there, it would be such ground? And how can the courts of Iowa be said to have had jurisdiction of the · subject-matter of the suit for divorce, the act or acts which constitute the cause of action having been committed in this State, when neither of the parties was domiciled in that State?

On no principle can the courts of Iowa be said to have had jurisdiction of the subject-matter of the suit in · this case. The act which was the cause of action being no legal wrong to the plaintiff when committed, both parties being then domiciled in this State, clearly, while the plaintiff remained in this State, the courts of Iowa had no jurisdiction of it. Jurisdiction was not given to such courts of such subject-matter, by the subsequent removal of the parties to that State. It is true that if, while the parties are domiciled in that State, either commits an act out of the State which is cause of divorce by the laws of the State, the courts of the State may take cognizance of it, because the *status* and relations of the parties, while domiciled in the State, are subject to the control and protection of the laws of the State.

Holmes *v.* Holmes.

The foregoing view is entirely consistent with the statement of the law on the subject by Mr. Justice STORY, in his work on Conflict of Laws, where he says: "Upon the whole, the doctrine now firmly established in America upon the subject of divorce is, that the law of the place of the actual domicil of the parties gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local law, without any reference to the law of the place of the original marriage, or the place where the offence for which the divorce is allowed is committed." (Story on Confl. of Laws, § 230, *a*.)

It is not meant by this that the cause of action can be transferred from one jurisdiction to another; but it is, as therein stated, the law of the place of the actual domicil of the parties which gives jurisdiction; and the jurisdiction of the subject-matter must, of course, exist at the time of the commission of the offence which constitutes the cause of action, or not at all. The law of the place of domicil, at the time of the commission of the offence, though committed in another place, will control. That this is the meaning of the proposition, appears from the opinion of Chief Justice GIBSON, in *Dorsey* v. *Dorsey* (7 Watts, 349), quoted as authority to sustain it. A part of what is so quoted is as follows : " While the parties remain subject to our jurisdiction, the marriage is dissoluble only by our law ; and, when they are remitted to another, it is immediately remitted along with them. * * * Transfer of allegiance and domicil is a contingency which enters into the views of the parties, and of which the wife consents to bear the risk. By sanctioning this transfer beforehand, we consent to part with the municipal governance incident to it ; but with this limitation—*we part not with the remedy of past transgression.*"

The doctrine is, that every State has the right to dissolve the marriage relation of all its domiciled inhabitants *for causes occurring while such domicil continues.* It is not necessary here to discuss the question of the wife's domicil, whether it remained in New York or followed that of the husband to Iowa. For, granting the latter, the cause of action occurred

Holmes *v.* Holmes.

before the husband acquired a domicil in Iowa, and, therefore, the courts of Iowa, under the doctrine above adverted to, acquired no jurisdiction of the subject-matter of the action.

See a very exhaustive discussion of the question by Judge REDFIELD in 3 Am. Law Reg., 193, new series; also, *Jackson* v. *Jackson*, 1 John., 424; *Bradshaw* v. *Heath*, 13 Wend., 407.

As to the second fact shown by the answer that the defendant was not served with process from the court in Iowa, and did not appear therein. This, I think, is equally fatal to the right of the judgment to be regarded as a valid and operative judgment in this State.

In *Vischer* v. *Vischer* (12 Barb., 640), Mr. Justice HAND, in a well considered opinion, held that, when husband and wife were residents of this State, and the husband left and went to reside in Michigan, and there obtained a divorce *a vinculo*, the wife still remaining in this State, and not having been served with process, and not having appeared in the suit, and having had no notice except by publication of a newspaper of that State, the divorce was a nullity. He says, "but admitting that the defendant had his domicil *bona fide* in Michigan, I do not see how the divorce granted there can be sustained by our courts. It is invalid on the ground both of fraud and *want of jurisdiction;* fraud because the allegation of desertion was not true, and want of jurisdiction because there was no service of process upon, or appearance of the wife." Basing his decision of the question of jurisdiction upon *Borden* v. *Fitch* (15 John. R., 121).

In that case a divorce was obtained by the defendant in Vermont, his wife living at the time in Connecticut. The wife was not served with process, and did not appear; and had no notice of the pendency of the suit except the constructive notice derived from publication of a citation in the newspapers, for which the laws of Vermont provided. The court say: "To sanction and give validity and effect to such a divorce, appears to me to be contrary to the first principles of justice. To give any binding effect to a judgment, it is

essential that the court should have jurisdiction of the person and of the subject-matter. * * * The want of jurisdiction makes it utterly void and unavailable for any purpose."

In *McGiffert* v. *McGiffert* ( 31 Barb., 69), that statement in *Borden* v. *Fitch* was adopted and reaffirmed. Again, in *Kerr* v. *Kerr* (41 N. Y. R., 272), *Borden* v. *Fitch* is cited to sustain the proposition that " the judgment of a court of a sister State has no binding effect in this State, unless the court had jurisdiction of the subject-matter and of the *persons of the parties.*"

In order that the court have jurisdiction of the person of the defendant, it is necessary that the defendant be served with the process of the court, or voluntarily appear in the suit. And such service of process can only be made within the territorial jurisdiction of the court; for it is settled that the process of a court cannot run into the territory of another government. (*Dunn* v. *Dunn*, 4 Paige, 425; *Isley* v. *Wilson*, 1 Dev. and Batt., Eq. 568, 576; *Harding* v. *Alden*, 9 Grant, R. 140; *Price* v. *Hickok*, 39 Verm.; *Shumway* v. *Stillman*, 6 Wend. R., 447.)

The personal notice served upon the defendant at Columbus in this State, was of no more effect than the publication of a citation in the newspapers would have been in bringing the defendant within the jurisdiction of the Iowa court, and gave no jurisdiction of the person of the defendant.

In the cases where the fact that no personal notice was given to the defendant is stated, in addition to the want of service of process and of appearance, legal notice and not service of notice out of the State in which the proceeding is had must be intended; for, as appears both upon principle and authority, such service out of the State is a nullity, and can add nothing to the force or validity of the judgment, so far as its operation out of the State in which it is rendered is concerned.

That the plaintiff is not estopped from denying the validity of the divorce obtained by him, will be seen when it is considered that if it did not, in fact, dissolve the marriage, the

courts will not allow either party to deny the existence of the marriage. The parties have no power of themselves, either in form or effect, to dissolve the marriage contract, as would be done, if effect should be given to the estoppel claimed in behalf of the defendant.

See, also, *Todd* v. *Kerr* (42 Barb., 317). Upon the whole case, I am of the opinion that the demurrer of the plaintiff was well taken, and should have been sustained.

Thĕ order overruling the demurer must be reversed with costs. Defendant to have leave to amend her answer, upon payment of costs of the demurrer and of the appeal.

MILLER, P. J., concurred. HOGEBOOM, J., dissented.

Order reversed.