THE PEOPLE OF THE STATE OF NEW YORK EX REL. THE COMMISSIONERS OF PUBLIC CHARITIES AND CORRECTION OF THE CITY OF NEW YORK AND MARY L. SMITH, RESPONDENTS, *v.* GEORGE W. SMITH, RELATOR AND APPELLANT.

*Divorce — decree, when void because fraudulently obtained.*

In proceedings instituted against the relator before a police justice in the city of New York for abandoning his wife and children the defense was an absolute divorce procured by him in Utah. The decree, which was granted November 3, 1876, showed that the relator appeared by counsel; that the wife did not appear in person or by counsel, but had been served by publication; that a decree was taken by default on the ground "that the said parties could not live in peace and union together and their welfare requires a separation, and that the plaintiff *wishes to become* a resident of Beaver county, in the territory of Utah." The wife testified that her husband left his family in Brooklyn, in September, 1876, telling her that he was going to Cincinnati to open a sewing machine agency; that she was never in Utah and never knew of the suit until a copy of the decree was served upon her in December, 1876. *Held,* that the decree was fraudulently obtained and was an absolute nullity.

CERTIORARI to review the decision of the· Court of Special Sessions of the city and county of New York, affirming an order made by one of the police justices of the city.

*W. C. Traphagen,* for the appellant. The judgment of a court of a sister State should have the same credit, validity and effect in every other court in the United States which it had in the State where rendered. (*McElmoyle* v. *Cohen,* 13 Peters, 312; *Warren Mfg. Co.* v. *Ætna Ins. Co.,* 2 Payne, 501; *Hampton* v. *McConell,*

3 Wheaton, 234; *Barber* v. *Barber*, 21 How. [U. S.], 591; 2 Bishop on Marriage and Divorce, 203.) A decree of divorce, valid and effectual by the laws of the State in which it was obtained, is valid and effectual in all other States. (*Cheever* v. *Wilson*, 9 Wall. [U. S.], 108, citing *Barber* v. *Barber*, 21 How. [U. S., 591.)

*A. W. Tenny*, for the respondents. A decree of divorce obtained by the husband in another State against the wife who was not within the jurisdiction of the court, was not served with process and did not appear to defend, is absolutely void and will not be enforced in the courts of this State. (*Kerr* v. *Kerr*, 41 N. Y., 272; *Hoffman* v. *Hoffman*, 46 id., 30; *Kamp* v. *Kamp*, 59 id., 212 [216]; *Todd* v. *Kerr*, 42 Barb., 317; *Holmes* v. *Holmes*, 4 Lans., 388; *Moe* v. *Moe*, 2 Sup. Ct. [T. & C.], 647.) The divorce of the relator was obtained by manifest fraud and is, therefore, void. (*Dobson* v. *Pearce*, 12 N. Y., 156; *Annett* v. *Terry*, 35 id., 260, and cases above cited.) When a foreign judgment is made the basis of an action it may be shown that it was obtained by fraud, and the party injured thereby need not be driven to the inconvenience and expense of a suit in equity to set it aside. (*Phillippson* v. *Lord Egremont*, 9 Q. B., 587–605; *Lord Brandon* v. *Becher*, 3 Clark & Fin, 510; *Sheddon* v. *Patrick*, 1 Macq., 535; *Reg.* v. *Saddlers Co.*, 10 H. L., 431; *Tommey* v. *White*, 4 id., 313.)

Davis, P. J.:

The relator, George W. Smith, was arrested in April, 1877, on the complaint of the Commissioners of Charities and Corrections of the city of New York, charged with abandoning his wife and children in violation of chapter 508, section 3 of the Laws of 1860. Upon a hearing before the police justice, who issued the warrant, he was convicted of being a disorderly person under the provisions of said act, and an order was made requiring him to pay to said Commissioners of Charities and Corrections the sum of ten dollars, weekly, toward the support of his family, for the period of one year next ensuing. The relator appealed from that order to the Court of Special Sessions of the Peace, and on the 3d of November, 1877, the appeal was duly heard before that court, composed of Geo. E. Kasmire, Henry Murray and N. K. Wheeler, police

justices duly assigned to hold the Court of Special Sessions at that time. After hearing the parties, the said court on the fifteenth of November dismissed the appeal and affirmed the order theretofore made by Justice SMITH, and required the said relator to enter into a bond, with surety, conditioned for the payment of the said sum of ten dollars weekly. The relator sued out a writ of *certiorari* to review the last-named decision and order. It appears by the return of the police justices composing the Special Sessions, that the case was brought to trial before them on the 3d of November, 1877, and submitted for decision; that on the fifteenth of November, the court, the same justices being present, unanimously affirmed the decision appealed from, and the papers were handed to the clerk of the court, by the presiding justice, marked "affirmed;" that the decision of affirmance was not publicly announced till the twenty-second of November, and when the announcement was made, but two of the justices who heard the case were present. On that day Mr. Justice BIXBY sat as a member of the court instead of Mr. Justice KASMIRE, but took no part in the decision of the case. Upon this state of facts we think the decision of the court must be regarded as having been made on the fifteenth of November, when all the justices who heard the appeal were present, and when the papers were handed to the clerk by the presiding justice, with the decision marked thereon. The subsequent public announcement was of no legal importance, and cannot affect the validity of proceedings already complete. The delay had occurred, it seems, for the accommodation of the relator to enable him to be present, with bail, on the twenty-second. The hearing before the Special Sessions was heard by consent of the parties, upon the evidence taken and proceedings had, before the police justice, which had been returned to the Special Sessions by him. The proof showing the marriage and the alleged abandonment, and sustaining the complaint in other respects, was sufficient in our opinion to uphold the order. The only defense interposed was a decree of divorce purporting to have been obtained by the relator against Mary L. Smith, his wife, in the Probate Court of Beaver county, in the Territory of Utah, on the 3d of November, 1876. The paper purporting to be a decree shows upon its face, that the plaintiff appeared by his counsel and that the defendant neither appeared in person nor by counsel; that

she had been served by the publication of a summons for forty days, in said Territory, and that the complaint of the plaintiff was taken *pro confesso*. The decree appears to have been granted on the ground "that the said parties cannot live in peace and union together, and that their welfare requires a separation, and that the plaintiff wishes to become a resident of Beaver county, in the Territory of Utah," and is an absolute decree dissolving the marriage relation and releasing both parties from the bonds of matrimony, and all the obligations thereof and declaring them severally at liberty to marry again. The respondent proved in answer to this alleged defense that the relator left his family in September, 1876, they then residing in Brooklyn, telling his wife he was going to Cincinnati to open an agency for the sale of the Whitney sewing machine; that she, his wife, was never in the Territory of Utah; was never served with any process in the suit, and never appeared personally or by attorney; that the first notice or knowledge she had of the suit was when she received a copy of the decree of divorce, in December, 1876, and that after he left her in September, she first heard from him by receiving a copy of the decree of divorce. Upon this state of facts nothing seems clearer than that the decree was fraudulently obtained. The relator was a resident of this State where his wife and family also resided. He left, informing his wife that he was going to open an office and enter into business in Cincinnati. He immediately commenced proceedings in Utah, where neither he nor she appear ever to have been, and obtained a decree from the Probate Court upon the publication of a summons of which she had no notice or means of knowledge. The decree shows upon its face that he had not become a resident of Utah, but only contemplated becoming one, which statement of itself was doubtless false. Under such circumstances to give any force to the decree would be a gross abuse of justice, for the fraud of the relator is too palpable to be questioned. Under numerous authorities in this State, the decree was an absolute nullity unavailable for any purpose. (*Kerr* v. *Kerr*, 41 N. Y., 272; *Hoffman* v. *Hoffman*, 46 id., 30; *Kamp* v. *Kamp*, 59 id., 212; *Todd* v. *Kerr*, 42 Barb., 317; *Holmes* v. *Holmes*, 4 Lans., 388; *Moe* v. *Moe*, 2 S. C. R. [T. & C.], 647; *Dobson* v. *Pearce*, 12 N. Y., 156; *State of Michigan* v. *Phœnix Bank*, 33 id., 25, 27.)

The proceedings and order of the Special Sessions should be affirmed, and the *certiorari* dismissed with costs.

BRADY and INGALLS, JJ., concurred.

Proceedings and writ affirmed; *certiorari* dismissed.