(78 Misc. Rep. 571.)

## SIMMONDS v. SIMMONDS.

(Supreme Court, Special Term, New York County. October, 1912.)

1. COURTS (§ 37*)—JURISDICTION—ESTOPPEL TO DENY.

　　Where a party invoked the jurisdiction of the court of another state, and obtained a divorce in that court, she was estopped to attack its jurisdiction in a subsequent divorce proceeding against the same defendant.

　　[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–151; Dec. Dig. § 37.*]

2. DIVORCE (§ 168*)—VACATING DECREE—ESTOPPEL.

　　Where a wife procured a decree of divorce, and the husband acted upon the same by remarrying, she is estopped to subsequently attack the validity of such decree, on alleged want of jurisdiction of the court.

　　[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 549, 550; Dec. Dig. § 168.*]

Action by Marion E. Simmonds against Philip R. Simmonds. Complaint dismissed upon the merits.

James W. McLaughlin, of New York City (David Provost, of New York City, of counsel), for plaintiff.

Willett & Frost, of New York City (William Willett, Jr., of New York City, of counsel), for defendant.

GIEGERICH, J. The action is for divorce on the ground of the defendant's alleged adultery. The plaintiff and the defendant were married on the 21st day of March, 1885, in the city of New York. In 1901 they moved to Virginia and established their residence in that state, where they lived until March 9, 1903, when the defendant left the plaintiff still residing in Virginia, and thereafter never had a residence in that state. The plaintiff continued to reside in Virginia with her two sons and a daughter, the issue of the marriage, until the spring of 1906; the exact date of her departure not being shown by the evidence. Upon leaving Virginia she returned to New York. Before leaving Virginia she retained an attorney there to procure, as she now claims, a limited divorce. He in fact procured an absolute divorce; that remedy apparently being provided by the Virginia law for abandonment. She claims she did not know an absolute divorce was procured for her, although the decree declares her to be "divorced from the bonds of matrimony," and such is the relief she is now seeking. The summons in that action was mailed by the plaintiff's attorney to the defendant, who was then living in Chicago, Ill., who signed a written acknowledgment indorsed upon the back of the summons

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and returned the same to the attorney. No appearance was made by the defendant in the suit, nor was any answer served, nor was any notice of the suit or order for publication or order for service without the state ever made, and no notice of the suit was ever given, except as appears by the summons and the indorsed admission of service thereon. Subsequently the defendant married another woman in the state of Delaware, and has lived with her since that time, and was still living with her at the time of the trial.

[1] It is established by abundant authority that the plaintiff, having invoked the jurisdiction of the Virginia court and obtained a judgment of divorce in that court, cannot be heard now to question its jurisdiction. This doctrine has been frequently applied by the courts of this state. One of the most recent cases is Starbuck v. Starbuck, 173 N. Y. 503, 66 N. E. 193, 93 Am. St. Rep. 631, where a woman, after obtaining a decree of divorce from her husband in Massachusetts on the ground of extreme cruelty, subsequently and after his death attempted in the courts of this state to establish a right of dower in his property. Although it appeared that the divorce had been obtained in the Massachusetts court without personal service of the summons upon the defendant, and that he did not appear in the action, either personally or by attorney, or otherwise submit himself to the jurisdiction of the court, nevertheless it was held that the plaintiff, having invoked the jurisdiction of the Massachusetts court and submitted herself thereto, could not be heard to question the validity of the decree. The same principle was applied in Matter of Morrisson, 52 Hun, 102, 5 N. Y. Supp. 90, where the wife's personal estate was claimed by the legal representatives of her deceased husband, who had obtained a divorce from her in the state of Ohio while she was domiciled in this state. In the Matter of Swales, 60 App. Div. 599, 70 N. Y. Supp. 220, affirmed upon the opinion below, 172 N. Y. 651, 65 N. E. 1122, a similar decision was made where a wife in this state sought letters of administration upon the estate of her former husband, from whom she had obtained a divorce in the state of Illinois upon grounds not recognized by the laws of this state as sufficient for that purpose. Other similar cases are cited in Starbuck v. Starbuck, supra, 173 N. Y. at page 508, 66 N. E. 193, 93 Am. St. Rep. 631.

It will be observed that in the foregoing cases the spouses seeking to repudiate the judgments of divorce previously obtained by them were endeavoring in the new litigation to establish some property right rather than to directly bring in question the marriage status, as is sought to be done in this action; but in Lacey v. Lacey, 38 Misc. Rep. 196, 77 N. Y. Supp. 235, the action, like the present one, was for a divorce. In that case Mr. Justice Leventritt held that a wife who had obtained in the state of Washington a divorce on the ground of abandonment could not in equity and good conscience be permitted to attack the validity of the decree which her own acts had induced the court to grant her. The case of Kirrigan v. Kirrigan, 15 N. J. Eq. 146, is also closely in point. There an application was made by the wife for alimony and counsel fees pendente lite in an action for di-

vorce on the ground of adultery. It appeared that the husband had, several years before, obtained a decree of divorce in Indiana. In the New Jersey action the wife claimed that the Indiana decree was fraudulently obtained, inasmuch as neither of the parties was at the time a bona fide resident of that state; but the court held that the wife, having appeared in that suit and having accepted the amount awarded to her by the decree for alimony, could not be permitted to impugn that decree on the ground that it was fraudulently obtained. The language used near the end of the opinion in Starbuck v. Starbuck, 173 N. Y. 509, 66 N. E. 193, 93 Am. St. Rep. 631, supra, seems to have anticipated a case of the kind now presented. After adverting to the fact that in the Swales Case it had been said that the action of the plaintiff in procuring the decree of divorce in Illinois did not constitute an estoppel within the ordinary acceptation of that term, for the reason that it did not influence the decedent to do anything which he would not otherwise have done, the court went on to say that in other cases this might not be true, and observed that if Starbuck had gone to Massachusetts and had contracted a marriage with a woman there, who acted upon the faith of the decree the plaintiff had obtained, it then might be that a question of estoppel would have been presented. What the court referred to by way of illustration in that case is what has happened in this case.

[2] Another woman has married the defendant in reliance upon the divorce which the plaintiff obtained. To permit the plaintiff under such circumstances to brand that other woman as an adulteress would be shocking to the conscience and to every sense of equity. It is because society as a whole has an interest in the marriage status that the laws and the courts exercise a scrutiny and control over divorce actions which they do not exercise over actions of an ordinary personal character. It is to protect members of society who are strangers to the divorce action, but who may in various ways be interested in the status of the parties to that action, that such limitations and safeguards are thrown around such actions. Hence it is that in divorce actions the confessions and admissions and acts of the parties are not given so wide an effect as in actions in personam. This unwillingness of the courts to give such full effect to the acts of the parties where the marriage relation is involved as would be given in a case where the public was not interested is well illustrated in the language used by the court in Holmes v. Holmes, 4 Lans. 392:

"That the plaintiff is not estopped from denying the validity of the divorce obtained by him will be seen when it is considered that, if it did not, in fact, dissolve the marriage, the courts will not allow either party to deny the existence of the marriage. The parties have no power of themselves, either in form or effect, to dissolve the marriage contract, as would be done if effect should be given to the estoppel claimed in behalf of the defendant."

On the other hand, the disastrous consequences of refusing to treat the acts of the parties as constituting an estoppel under any circumstances are forcibly illustrated in the present case. It would be difficult to conceive a greater injury than will be done to the woman who is now living with the defendant as his wife, if this action were al-

lowed to be successful. Her past relations with him would be stigmatized as immoral, and her future position would be wholly at his mercy, as he would be free to again take her as his wife or to cast her off. This is a case where it should be held that there is an estoppel on both sides. The plaintiff procured the decree, and the defendant has acted upon it in the most important way possible. Neither should now be permitted to bring into question the validity of the divorce thus obtained and thus acted upon. To hold otherwise would be to inflict a shocking injustice and injury upon an innocent member of society under guise of maintaining a principle necessary for the protection of society and its members.

The complaint should be dismissed upon the merits. Requests for findings may be submitted by either party, with proof of service on the other side, within five days after the publication of this memorandum.