## Romanski's Estate

*Leo W. White* and *J. Julius Levy*, for exceptants. *James P. Harris*, contra.

HOURIGAN, J., April 10, 1945.—Before us are exceptions to the report of audit of the first and final ac-

count. A complete review of the record convinces us that the distribution is correct.

Decedent and claimant were married in Rome, Italy, on July 5, 1930. Claimant obtained a divorce from decedent in Reno, Nev., on August 30, 1941, which remains in full force and effect. Decedent died May 24, 1943.

Claimant here, libellant in the Reno divorce, now seeks to repudiate her Reno divorce, questions the jurisdiction of that forum, and asks to have the divorce rendered null and void in our jurisdiction to the end that decedent's estate shall be distributed to her.

No reason given would justify permitting her to question the validity of that divorce in these proceedings. She makes no allegation that the divorce was obtained as the result of decedent's fraud or duress. Her principal reason for obtaining the divorce was to deprive decedent from sharing in her estate if she died first. If she did, no question would be raised by her heirs or legatees concerning the validity of her divorce. Her husband, or his committee in lunacy, might well question it.

So far as we have been able to discover, all attacks upon foreign divorces in Pennsylvania are in cases where the respondent, or in criminal actions, the Commonwealth, is the moving party.

The question to be decided is: "Can claimant here, libellant in the Reno divorce, question the validity of that divorce in these proceedings upon the ground that the Reno court was without jurisdiction?" We are of opinion that she is estopped from so doing.

No Pennsylvania case has been cited by counsel on either side with facts similar to those in this case. It is well established in Pennsylvania that a party cannot take inconsistent positions, as the claimant in this case is attempting to do and is estopped from so doing. One who invokes the jurisdiction of a court cannot thereafter be permitted to question it, under the maxim

"allegans contraria non est audiendus": Donnelly v. Public Service Commission et al., 268 Pa. 345, 350; Bell et al. v. Bell, 287 Pa. 269.

In Field v. Field, 67 Pa. Superior Ct. 355, the facts were substantially as follows: Libellant filed a libel in divorce in the Common Pleas Court of Fayette County, charging cruel and barbarous treatment. Respondent was served personally and caused an appearance to be entered. Respondent did not appear at the hearing. On March 18, 1911, a decree was granted. On April 11, 1916, respondent petitioned for a rule to show cause why the decree should not be revoked, averring that at the time of the filing of the libel libellant was not a resident of Fayette County and had perjured herself at the instance of other parties to obtain the decree. The petition was dismissed.

On May 23, 1916, a second petition was presented reciting the first and adding particular averments that petitioner had not entered a defense because of an agreement with libellant's paramour. The court discharged the rule, holding that the order dismissing the first petition was res adjudicata of the jurisdiction of the court, and that appellant was guilty of gross laches in making application for relief and was estopped by his own participation in the alleged fraud. The Superior Court said (p. 359):

"The first petition did not set up collusion, and the second clearly alleged it. But the agreement alleged by the petitioner to furnish consideration for his acquiescence in the divorce is contrary to public policy: Kilborn v. Field, 78 Pa. 194; Mathiot's Est., 243 Pa. 375. It is clear that petitioner was not entitled to relief even if a fraud was committed. His prayer was addressed to the conscience of a chancellor and his petition convicts him of being a party to and a sharer in the results of the fraud. He does not come into court with clean hands, and is not entitled to relief: Miltimore v. Miltimore, 40 Pa. 151."

The question raised here has been passed upon in other jurisdictions.

"It is established by abundant authority that the plaintiff, having invoked the jurisdiction of the Virginia court and obtained a judgment of divorce in that court, cannot be heard now to question its jurisdiction. This doctrine has been frequently applied by the courts of this state. One of the most recent cases is Starbuck v. Starbuck, 173 N. Y. 503, where a woman, after obtaining a decree of divorce from her husband in Massachusetts on the ground of extreme cruelty, subsequently and after his death attempted in the courts of this state to establish a right of dower in his property. Although it appeared that the divorce had been obtained in the Massachusetts court without personal service of the summons upon the defendant, and that he did not appear in the action, either personally or by attorney, or otherwise submit himself to the jurisdiction of the court, nevertheless it was held that the plaintiff, having invoked the jurisdiction of the Massachusetts court and submitted herself thereto, could not be heard to question the validity of the decree. The same principle was applied in Matter of Morrison, 52 Hun, 102, where the wife's personal estate was claimed by the legal representatives of her deceased husband, who had obtained a divorce from her in the state of Ohio while she was domiciled in this state. In the Matter of Swales, 60 App. Div. 599, affd. upon the opinion below, 172 N. Y. 651, a similar decision was made where a wife in this state sought letters of administration upon the estate of her former husband, from whom she had obtained a divorce in the state of Illinois upon grounds not recognized by the laws of this state as sufficient for that purpose. Other similar cases are cited in Starbuck v. Starbuck, *supra* . . .": Simmonds v. Simmonds, 78 Misc. 571, 572, 138 N. Y. Supp. 639,

"Where a party obtained a decree of divorce without the state on notice by publication, he will not be permitted to deny the jurisdiction of the court or the validity of the decree, since he is estopped by having submitted himself to its jurisdiction and by his securing a decree in his own favor": Gibson v. Gibson, 81 Misc. 508, 143 N. Y. Supp. 37 (syllabus).

"Where a husband leaves his wife in one state, and procures an absolute divorce in another state, he cannot impeach the decree on the ground that the foreign court had no jurisdiction of the parties": People ex rel. Shrady v. Shrady, 95 N. Y. Supp. 991 (syllabus).

"A petition by a wife to vacate a decree of divorce granted in a suit by her alleged that the. husband urged her to apply for and obtain a decree on the ground of desertion . . . *Held*, that a demurrer to the petition was properly sustained, as it showed nothing more than a collusive arrangement to obtain a divorce, and did not show any such duress as exempted the wife from the rule that one may not be heard to impeach a decree which he has procured to be entered in his own favor.": Robinson v. Robinson, 138 Pac. 288 (syllabus).

The following rule is laid down in 27 C. J. S. 814, §170:

"As a rule a decree [in divorce] will not be set aside at the instance of the successful party, unless it was the result of defendant's fraud or duress, or unless the suit was instituted without the knowledge or consent of applicant."

The cases cited from other jurisdictions and the doctrine of laches, estoppel and unclean hands in this State are full justification for the following statement laid down in A. L. I. Restatement of the Law, Conflict of Laws, §112:

"The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by

a spouse who has obtained such decree of divorce from a court which had no jurisdiction, or by a spouse who takes advantage of such decree by remarrying."

The second illustration of this, on page 170, is:

"2. A obtains a divorce in a state where neither he nor his wife is domiciled. B, his wife, dies. A is barred from claiming a distributive share of her estate."

The doctrine that the validity of a divorce decree cannot be questioned by the spouse who obtained it was affirmed in Commonwealth ex rel. Allison v. Allison, 151 Pa. Superior Ct. 369. In that case a criminal action, charging desertion and nonsupport, under section 733 of The Penal Code of June 24, 1939, P. L. 872, was started by an alleged wife against her alleged husband. The defense was that prosecutrix was not his wife because a Mexican divorce granted to him was null and void. The jury found him guilty. The prosecutrix knew the defendant to be a married man and visited at his home. An adulterous relationship was carried on between them for five years. The defendant desired to obtain a divorce but had no grounds upon which he could successfully do so in the courts of Maine, where the parties resided. Defendant and prosecutrix then consulted a lawyer in Texas, who instituted a divorce action in Mexico. A decree was granted in Mexico in 1937, although neither of them ever resided there. A form of marriage was then entered into between the two of them. In substance, the Superior Court held that because of the fact that both parties were parties to a fraud perpetrated upon the Mexican court, and that the prosecutrix knew that she could not marry the defendant until he had a valid divorce, she could not become his wife; that she was a party to the fraud perpetrated upon the Mexican court; that they jointly must assume whatever risks were involved; and that the burden was upon the Commonwealth to prove that the prosecutrix was defendant's

wife. The Superior Court reversed the conviction and concluded its opinion by saying (p. 372) :

"We do not mean to repudiate the general doctrine that the validity of a divorce decree cannot be questioned by the spouse who obtained it. Restatement, Conflict of Laws, §112. We limit ourselves to a holding that in a proceeding under section 733 of the Penal Code it may be questioned by the husband who procures the invalid decree, particularly where the relatrix participated in the procurement to the extent here shown."

We therefore conclude that the validity of the Reno divorce decree cannot be questioned in these proceedings by the claimant who obtained it.

Now, April 10, 1945, the exceptions are dismissed and the report of audit is confirmed absolutely.