FRANK M. BAKER, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

### No. 2, SAME v. SAME.

### No. 3, SAME v. SAME.

*Service of summons by publication — validity of judgment of divorce entered thereon — Effect of citizenship and domicil of defendant — Effect of general verdict on indictment, with one count not sustained.*

In a suit for divorce, a valid judgment, *in personam*, may be rendered against a defendant, not during the progress of the suit within the territorial jurisdiction of the court rendering it, provided that be the place of his citizenship and domicil, though process be served on him only in some method prescribed by the law of that jurisdiction, as a substitute for personal service, and though he has not voluntarily appeared; and such judgment is effectual to dissolve the marriage contract, and will be prevalent and effectual everywhere.

*Semble,* that such judgment would have the same effect, where the defendant was not a citizen of, or domiciled within the State giving jurisdiction to the court, and especially where the marriage sought to be annulled was celebrated therein.

Reargument ordered as to the effect of a general verdict upon an indictment containing several counts, one of which cannot be sustained, by reason of facts established by the defense upon the trial.

WRITS OF ERROR to the Court of General Sessions in and for the county of Cayuga, to review the conviction of the plaintiff in error of bigamy.

*A. P. Laning,* for the plaintiff in error. By the first section of the fourth article of the Constitution of the United States, if the jurisdiction of the court of another State be established, the judgments rendered by it shall be conclusive as to their merits to the same extent as a domestic judgment, so that they cannot be contradicted or impeached anywhere after having been shown to have been rendered in good faith, without fraud, and in accord with the existing law in the State in which they were decided. (*Livingstone* v. *Maryland Insurance Co.,* 6 Cranch, 274 ; *Talbot* v. *Seeman,* 1 id., 1, 38 ; *Raynham* v. *Canton,* 3 Pick., 293 ; *Consequa* v. *Willings,* I Peter's Cir. R., 225, 229 ; *Church* v. *Hubbard,* 2 Cranch, 187, 238. See, especially, *James* v. *Allen,* 1 Dall., 188 ; *Phelps* v. *Holker,* id., 264 ; *Hitchcock* v. *Arcken,* 1 Caines, 460, 479 ; *Kibbe* v. *Kibbe,* Kerby, 119 ; *Vandervoorst* v. *Smith,* 3 Caines, 155 ; *Yeaton* v. *Try,* 5 Cranch, 335, 343. See, also, *McElmoyne* v. *Cohen,* 13 Pet., 312, and *D'Arcey* v. *Ketchum,* 11 How. [U. S.], 165; *Insurance Co.* v. *French,* 15 id., 406; *Thompson* v. *Whitman,* 18 Wall., 457.) The act of sixteenth of May, 1790, chapter 11, which declares that such proceedings, duly authenticated, shall have such faith and credit given them, within every court of the United States, as they have by law or usage in the courts of the State from whence the records are taken, is valid and obligatory in any court in the United States. (*Mills* v. *Duryea,* 7 Cranch, 481 ; *Hampden* v. *McConnell,* 3 Wheat., 234 ; 1 Kent's Com. Lectures, 12, pp. 243, 244 ; *United States* v. *Amedy,* 11 Wheat., 392 ; *Buckner* v. *Finlay,* 2 Pet., 592 ; *Owings* v. *Hall,* 9 id., 627 ; *McElmoyne* v. *Cohen,* 13 id., 312 ;

*Stacey* v. *Thrasher*, 6 How., 44 ; *Bank of Alabama* v. *Dalton*, 9 id., 522 ; *D'Arcey* v. *Ketchum*, 11 id., 165 ; *Booth* v. *Clark*, 17 id., 322 ; *Craig* v. *Brown*, Pet. C. C., 354 ; *Gardner* v. *Lindo*, 1 Cr. C. C., 78 ; *Turner* v. *Waddington*, 3 Wash. C. C., 126 ; *Catlin* v. *Underhill*, 4 McL., 199.) The wife may acquire a separate domicil, whenever it is necessary or proper that she should do so ; and the proceeding for a divorce may be instituted where the wife has her domicil ; the place of the marriage, of the offense, and of the domicil of the husband, are of no consequence. (*Cheever* v. *Wilson*, 9 Wal., 108, 123 ; *Strader* v. *Graham*, 10 How. [U. S.], 82 ; *Bennett* v. *Bennett*, Deady, 299; 2 Bishop on Marriage and Divorce, 475 ; *Barber* v. *Barber*, 21 How. [U. S.], 582 ; *Cannel* v. *Buckle*, 2 P. Wills., 243, 244 ; *Ex parte Strangeways*, 3 Ark., 478 ; *Brooks* v. *Brooks*, Pre Ch., 24 ; *Wheeler* v. *Wheeler*, 2 Dana, 310 ; *Denton* v. *Denton*, 1 J. C., 2, 364 ; *Purcell* v. *Purcell*, 4 Hen.-Mansf., 507 ; *Williams* v. *Dormer*, 16 Jur., 366 ; 9 Eng. L. & Eq., 598 ; 2 Robertson, 505.) It is sufficient for the validity of a divorce that one of the parties only be domiciled in the country, and the citation need not be served personally on the defendant. (*Ditson* v. *Ditson*, 4 R. I., 87, 102, 103; Cooley's Const. Lim. [2nd Ed.], 401, and note; *Irby* v. *Wilson*, 1 Deo. & But. Eq., 568; *State* v. *Sclachter*, Phillips [No. Car.], 520; *Harding* v. *Alden*, 9 Greenl., 140; 2 Kent Com. [6th ed.], 110, note ; *Mansfield* v. *McIntyre*, 10 Ohio, 27 ; *Tolen* v. *Tolen*, 2 Blackf., 407; *Hull* v. *Hull*, 2 Strob. Eq., 174 ; *Cooper* v. *Cooper*, 7 Ohio, 238 ; *Harrison* v. *Harrison*, 16 Alb., 499 ; *Gleason* v. *Gleason*, 4 Wisc., 64; *Hubbell* v. *Hubbell*, 3 id., 662 ; *Thompson* v. *The State*, 28 Ala., 12 ; *Schafer* v. *Bushnell*, 24 Wisc., 327 ; *Hood* v. *Hood*, 11 Allen, 196 ; *Beard* v. *Beard*, 21 Ind., 321 ; *Rhyms* v. *Rhyms*, 7 Bush., 361 ; *Wilcox* v. *Wilcox*, 10 Ind., 436 ; *Schreck* v. *Schreck*, 32 Texas, 578 ; *Pennoyer* v. *Neff*, The Reporter, March 20, 1878, p. 352; Code, § 438, sub. 4.) Baker, after such divorce, was not a married man within this State. (*Ponsford* v. *Johnson*, 2 Blatch., 51; *Dickson* v. *Dickson*, 1 Yerg., 110; Shelf on Mar. and Div., 476, 478; 4 Kent Com., § 54; 2 Black. Com., 130; 2 Edw. Ch. R., 596; 5 Barb. S. C. R., 117; Story's Confl. of Laws, §§ 620, 621.)

*S. E. Payne* (District Attorney,) and *H. R. Selden*, for the people. The Ohio divorce record offered in evidence was, in this State, whatever may have been its effect in Ohio, utterly void. (3 Am. Law Reg. [N. S.], 200, §§ 10, 11,12, per Judge REDFIELD.) Such publication gives no jurisdiction over the party to whom the notice is addressed, such party being a resident of another State. (*Borden v. Fitch*, 15 Johns., 121, 141, *et seq.; Kerr v. Kerr*, 41 N. Y., 274, 275; *Phelps* v. *Baker*, 60 Barb., 107; *Dunn* v. *Dunn*, 4 Paige, 425, 430; *Vischer* v. *Vischer*, 12 Barb., 644, 645; *Holmes* v. *Holmes*, 4 Lans., 388; *Moe* v. *Moe*, 2 N. Y. S. C., 647; *McGiffert* v. *McGiffert*, 31 Barb., 69; *Shumway* v. *Stillman*, 6 Wend., 447, 453; *Bradshaw* v. *Heath*, 13 Wend., 418; 2 Kent's Com., 109; *Windsor* v. *McVeigh*, 93 U. S. Rep. [3 Otto], 277.) There were some decisions in the English courts, under the English statute of bigamy which does not differ materially from ours, as far as relates to the present question, which would justify the introduction of evidence tending to show good faith on the part of the person charged with the offense, but those decisions have been overruled. (*Reg.* v. *Turner*, 9 Cox's C. C., 145; *Reg.* v. *Horton*, 11 id., 670; *Reg.* v. *Gibbons*, 12 id., 237; S. C. 4 Eng. Rep. [by Moak], 527; *Commonwealth* v. *Thompson*, 7 Met., 472; *Commonwealth* v. *Thompson*, 6 Allen, 592.

TALCOTT, P. J.:

The three several writs of error in these cases each brings up the record of a conviction of the plaintiff in error, before the General Session of Cayuga county, for bigamy.

The case distinguished as No. 1 brings up, as a part of the record, an indictment against the plaintiff in error, by the grand jury of the county of Cayuga, which charges that the plaintiff in error on the 8th day of February, in the year 1871, at the town of Fremont, in the State of Ohio, married one Sallie West, and that afterwards, on the 14th day of November, 1874, and while he was so married to the said Sallie West, he did feloniously and unlawfully marry and take to wife one Eunice Nelson, while the said Sallie West, his former wife, was then living.

To this indictment the defendant plead not guilty, and the case came on to be tried before the said General Sessions of Cayuga

county, on the 23d day of February, in the year 1877. The bill
of exceptions taken on the said trial shows the marriage of the
plaintiff in error to the said Sallie West, at Fremont, in the
State of Ohio (where the said Sallie West at all times before the
said marriage had resided), on the 8th day of February, 1871,
and that the said Sallie West had continuously resided in the
State of Ohio aforesaid, from 1872 until her death, which occur-
red in December, 1876, and that she married one C. H. Murray,
about a year before her death, and had a child after her marriage
to Murray. That on the 14th day of November, 1874, the plain-
tiff in error was married to Eunice Nelson, as charged in the
indictment.

The counsel for the plaintiff in error gave evidence tending to
prove that, before the marriage to Eunice Nelson, the plaintiff in
error had been informed and believed that the said Sallie West,
to whom he was first married, had obtained a divorce from him,
and that the marriage contract between him and the said Sallie
(otherwise known as Sarah N.) had been annulled; and the said
plaintiff in error then offered in evidence an exemplified copy of
the proceedings and the judgment of the Court of Common Pleas
of the county of Seneca, in the State of Ohio, the same being a
court of record of that State, showing that the said Sallie (or
Sarah), on the 30th day of March, 1874, had filed, in the clerk's
office of the said court, her petition, in which she represented that
she had been a resident of the State of Ohio for a year then last
past, and was then a *bona fide* resident of said county of Seneca,
and setting forth her said marriage to the plaintiff in error, then
stated in the said petition to be " of parts unknown;" that she
cohabited with him at Brooklyn and at Rochester, New York,
until 1872, when, in view of approaching child-birth, she, at the
request of her husband, left Rochester, N. Y., for the purpose of
remaining with her relatives until after her child should be born,
and that the plaintiff in error promised to follow soon after, so as
to be with her in her said confinement; that, in fact, he has never
followed her, nor asked her to return to him, nor has he advised
her of his whereabouts, or contributed one cent to her support.
The said petition then charges that her said husband had been
guilty of gross neglect of duty, and has greatly wronged the peti-

tioner, and prays that the said marriage contract be annulled and set aside, and that she may be divorced from her said husband; that the care and custody of her child be decreed to her, and that she may have alimony awarded to her.

Afterwards, on the 8th day of January, 1874, proof of publication of notice was filed in the clerk's office of said court, which notice is fully set out in the said record, together with the proof of the publication thereof, which shows that it was published, for six weeks successively, immediately prior to the 1st day of June, 1874, in the "Seneca Advertiser," a weekly newspaper printed and of general circulation in the said county of Seneca; and afterwards, at the June term of said court, in the year 1874, as appears by the said record, the cause came on and was heard upon the petition and testimony, "upon consideration whereof the court find that due notice of the filing and pendency of said petition was given to the said defendant, Francis M. Baker, according to law," and that the said defendant, Baker, has been guilty of gross neglect of duty to the said plaintiff, as in said petition alleged; and it was, "therefore, adjudged and decreed that the marriage contract heretofore (theretofore) existing between the said parties be, and the same is, hereby set aside and wholly annulled, and the said parties wholly released from the obligations of the same," etc.

The counsel for the plaintiff in error also offered in evidence the Revised Statutes of Ohio, showing that the proceedings mentioned in the said record were regular, and in all respects sufficient to annul the marriage contract between the plaintiff in error and the said Sallie, and that the court had jurisdiction to pronounce such judgment, and that the same was valid and binding between the parties under the laws of Ohio. Parts of the statute are set forth in the record. It appears from an examination of its provisions that the several courts of Common Pleas of said State have the cognizance of granting divorces for various causes, among others, for "gross neglect of duty," and authorizing the court to proceed upon publication of the summons, in the manner and for the time shown by the said record of judgment, and providing that all applications for divorce shall be made in the county where the complainant *bona fide* resides at the time of the application, and that he or she must have been a resident of the

State of Ohio at least one year next before the filing of his or her petition.

On this judgment record, accompanied by the statute of said State being offered in evidence, the district attorney objected to their reception, upon the ground that the court in which the judgment was pronounced had no jurisdiction over the defendant in that suit, the plaintiff in error and the subject-matter of the action; and the said court thereupon decided that the evidence was incompetent for any purpose, except as showing the intent of the defendant, and received the evidence for that purpose only, to which ruling the counsel for the defendant excepted. At the close of the evidence, the court charged the jury, among other things, "that the divorce obtained by Sallie West, his first wife, against the defendant in the State of Ohio, will not protect him in this State, although it would protect him in the State of Ohio, and that said Sallie, notwithstanding such divorce, was still his lawful wife, and the defendant was her husband." To which charge the defendant, by his counsel, excepted.

There seem to be no question but that, under the laws of Ohio, the court of Common Pleas of Seneca county had jurisdiction of the subject-matter. As to jurisdiction of the person of the plaintiff in error, in an action of this character, obtained without the services of process, we are relieved from a minute examination of the numerous cases that have been decided in this State, and elsewhere, by the recent decision of the Court of Appeals, in *Hunt* v. *Hunt* (MSS. Court of Appeals; Albany Law Journal, June 22, 1878, p. 421), in which case this whole subject has been very elaborately considered, and in which that court holds a divorce obtained in Louisana, without service of the process on or voluntary appearance of the defendant, but by the appointment of a *curator ad hoc*, valid and binding in this State upon the party so brought into court.

In that case, the court, by the opinion of FOLGER, J., says : " It is our conclusion, whatever grounds may be stated, that, in a suit for divorce, a valid judgment, *in personam*, so as to effect a dissolution of the marriage contract, which shall be prevalent everywhere, may be rendered against a defendant not within territorial jurisdiction during the progress of the suit, if that be the

place of his citizenship and domicil, though process be served on him only in some method prescribed by the law of that jurisdiction, as a substitute for personal service, and though he has not voluntarily appeared. We need, in this case, to take no position more extreme than this."

It will be seen, therefore, that the ruling in the case of *Hunt* v. *Hunt* is not extended beyond cases in which the citizenship and domicil of the party proceeded against is within the jurisdiction in which the proceeding for a divorce is taken.

In the case of *Hunt* v. *Hunt*, it was not necessary to go farther than this; but, having held that a valid and binding decree may be made in an action for divorce, " which shall be prevalent everywhere," without service of process upon the absentee, or voluntary appearance, it is probably doubtful whether the limitation of the decision in *Hunt* v. *Hunt*, to those cases in which the party proceeded against is a citizen of the State in which the judgment is rendered, or has his domicil there, will be maintained. The same reason for rendering the proceedings for a divorce in such case valid and binding everywhere, provided the party applying is, in good faith, a resident within the jurisdiction within which the judgment is pronounced, seem to apply, whether the party proceeded against is a citizen of that jurisdiction, or has his domicil there or elsewhere, especially where the marriage sought to be annulled was performed within the jurisdiction of the State in which the judgment was rendered, and derives its binding force and its incidents from the laws of that jurisdiction.

The law of this State, under which a judgment may be obtained in an action for divorce against an absentee, by substituted service, does not make it necessary to the validity of the judgment that the party proceeded against should be a citizen of this State, or have his or her domicil here. As it was said by the court, in *Harding* v *Alden* (9 Greenl., 140), where the Supreme Court of Maine upheld a Rhode Island divorce, where process was not served within the State: "If we refuse to give full faith and credit to the decree of the Supreme Judicial Court of Rhode Island, because the party libeled had his domicil in another State, and was not within their jurisdiction, we refuse to accord to the decrees of that court the efficiency we claim for our own, when.

liable to the same objection." (And see Bishop on Mar. and Div., § 736; *Hood* v. *Hood*, 11 Allen, 199; *Ditson* v. *Ditson*, 4 R. I.; 109; *Mansfield* v. *McIntire*, 10 Ohio, 29; *Harrison* v. *Harrison*, 19 Ala., 499; *Thompson* v. *The State*, 28 Ala., 13; *Hull* v. *Hull*, 2 Strobbart's Eq. R. [S. C.], 174; *Tolen* v. *Tolen*, 2 Blackf. [Ind.], 407.)

In the present case, however, the presumption arising from the evidence is, that the plaintiff in error was a citizen and domiciled within the State of Ohio at the time when the proceedings, which terminated in a judgment annulling the marriage between him and Sallie West, were commenced.

The first we hear of him is the solemnization of the marriage between himself and Sallie West, at Fremont, in the State of Ohio, and presumptively he was then domiciled there. Some time after this it appears that he was for a time with his wife in Brooklyn, and afterwards in Rochester, in this State; that she returned to Ohio, and he represented that he was about to follow her to that State, since which time his movements seem to have been precarious and uncertain, so that his wife did not know where he was when she filed her petition in the Court of Common Pleas of Seneca county for a divorce. These facts are sufficient to raise the presumption that he was a citizen of the State of Ohio, where the evidence first shows him to be, and there had his domicil, in the absence of any testimony that he had elected to change it to this State. And, at all events, it was a question of fact whether he had elected to remove his domicil from the State of Ohio, and should have been left to the jury for decision. But the ruling of the court excluded from the jury all questions as to the citizenship or domicil of the plaintiff in error, by the ruling that the Ohio divorce was wholly void, and could have no effect in the case, except as evidence on the question of the prisoner's intent. For these reasons the judgment of the General Sessions, whereby the plaintiff in error was sentenced to imprisonment for the term of five years, upon his conviction for having married Eunice Nelson while he was married to the said Sallie West, was erroneous.

Therefore, the conviction and judgment of the General Sessions, in the first of the three indictments against the plaintiff in error,

is reversed, and the proceedings are remitted to the General Sessions of Cayuga county, with directions for a new trial.

The other two convictions, brought up on the several writs of error, are as follows : The indictment in the case designated as No. 2 charges the marriage with Sallie West, and a subsequent marriage, on the thirteenth day of July, 1875, with one Christiana Everson, the said Sallie West then being living. And a second count in the same indictment charges the marriage with Eunice Nelson, on the fourteenth day of November, 1874, and a subsequent marriage with said Christiana Everson, during the lifetime of the said Eunice Nelson.

The indictment in the case designated as No. 3 charges the marriage with Sallie West, and the subsequent marriage to M. Fredricka Delano, at Rochester, on the seventh of October, 1876, the said Sallie West being yet living. A second count in the same indictment charges the marriage to Eunice Nelson, and the subsequent marriage to M. Fredricka Delano, while the said Eunice Nelson was yet living. And a third count in the same indictment charges the marriage to Christiana Everson, and the subsequent marriage to M. Fredricka Delano, while the said Christiana Everson was living.

The evidence concerning the divorce granted by the Court of Common Pleas of the State of Ohio, and of the laws of Ohio applicable to the case, was substantially the same as in the case of the first indictment. The plaintiff in error was convicted on the said indictments, numbered, respectively, two and three; and the court, on each of such convictions, sentenced the plaintiff in error to be imprisoned in the State prison at Auburn for the term of five years, to commence, in each case, at the termination of his former sentence.

The verdict in each of the cases numbered two and three was general, to the effect " that the said Frank M. Baker is guilty, in manner and form, as, by the indictment aforesaid, is alleged and charged against him." The judgments in all the cases were signed on the same day, but the trial in case No. 1 appears to have taken place on the 23d of February, 1877; in case No. 2, on the 26th of February, 1877, and in case No. 3, on the 27th of February, 1877, and the sentence in each case to have been pronounced on the day of the trial of that case.

The first question which arises in the cases numbered two and three is, since the conviction upon indictment number one is reversed, what is the validity and effect of the judgment in case No. 2, that the plaintiff in error be imprisoned for five years, " to commence at the expiration of his former sentence," and when does that sentence take effect ?   And, also, when does the sentence in case No. 3 take effect ?   And, secondly, what is the validity and effect of the verdict in the cases numbered two and three, since it appears, by the reversal of the conviction in case No. 1, that one of the counts in the indictment in each of the other cases cannot be sustained by reason of the Ohio divorce.

The learned counsel on both sides devoted their entire and very able arguments and attention to the question of the validity of the Ohio divorce in this State; and, while we have certain impressions as to the effect of a general verdict upon an indictment containing several counts, one of which it is held, cannot be sustained by reason of facts established by the defense; yet the counsel have not been heard on the subject, and we do not desire to pass judgment upon a question of so much importance to the plaintiff in error, and to the people, without being advised by the counsel for both parties.

We, therefore, order a reargument in the cases respectively numbered two and three, to the end that the points suggested may be carefully considered accordingly.

A reargument is ordered in the cases respectively numbered two and three.

Hardin, J., concurs; Smith, J., dissents, in case No. 1, on the ground that, on the evidence in the case, it appears that Baker was not a citizen of, or domiciled within, the State of Ohio at the time of the proceedings for a divorce, but was domiciled in the State of New York.

Case No. 1. The conviction and judgment of the General Sessions of Cayuga county reversed, and the proceedings remitted to the General Sessions of Cayuga county, with directions for a new trial.

Cases Nos. 2 and 3. Reargument ordered.